## TAYLOR v. THE STATE.

1. Sexual intercourse between a man and his stepdaughter is incestuous.

2. One who on his own motion causes a verdict in a criminal case to be set aside may be subsequently tried upon a new indictment charging a different offense from that named in the old one, though some

of the evidence material on the trial of the former may be pertinent on the trial of the latter.

3. To authorize a conviction on the testimony of an accomplice, the same must be corroborated by evidence connecting the accused with the perpetration of the offense. Corroborating evidence which, without going to this extent, merely casts a grave suspicion upon the accused is not sufficient.

4. On a trial for incestuous adultery, evidence tending to show acts of criminal intimacy between the man and the woman, a prosecution for which would be barred by the statute of limitations, is admissible, not to warrant a conviction, but as tending to show that the illicit relationship continued to a period within the statute. Such evidence, coming from the woman, is not, however, corroborative of her testimony as an accomplice in the sense in which the law requires such testimony to be corroborated in order to support a conviction thereon.

5. The mere fact that a woman became pregnant does not so corroborate her testimony to the effect that her stepfather had sexual intercourse with her as to warrant his conviction of incestuous adultery.

6. Mere reluctance on the part of a woman to submit to sexual intercourse does not make the act rape on the part of the man.

7. On a trial for incestuous adultery, evidence tending to show acts and declarations of the accused manifesting solicitude as to the pregnancy of the woman, and also implicating him as the author of her ruin, is not only admissible but may amount to sufficient corroboration of her testimony to authorize his conviction.

8. On such a trial it is competent for the woman to testify that she never had sexual intercourse with any man except the accused.

9. A witness may on cross-examination be asked if she did not on a former trial testify so and so, without producing and reading to her the official report of her testimony on that occasion; but before such report can be put in evidence for the purpose of impeaching her, counsel conducting the cross-examination should call her attention to its contents and allow her full opportunity to explain or deny.

10. A trial judge should never, in cases to which section 1036 of the Penal Code is applicable, fail to charge the jury that they may recommend that the punishment be as for a misdemeanor, and that such recommendation will be effectual if approved by the court.

Argued February 19,—Decided March 2, 1900.

Indictment for incest. Before Judge Janes. Douglas superior court. November term, 1899.

*J. S. James, B. G. Griggs, W. A. James,* and *J. V. Edge,* for plaintiff in error. *W. T. Roberts, solicitor-general, T. W. Rucker,* and *J. R. Hutcheson,* contra.

SIMMONS, C. J. At the November term, 1899, of Douglas superior court, W. A. Taylor was tried and convicted of the

offense of incestuous adultery alleged to have been committed with his stepdaughter, Maggie McGuire. The case is here for review upon assignments of error to divers rulings made at the trial. As we are constrained to reverse the judgment, we will deal with all the points made in the record which are of sufficient materiality to require special notice and which may probably arise on the next hearing.

1. It was insisted by counsel for the accused, at the trial below and here, that sexual intercourse between a married man and his stepdaughter was not incestuous. Section 380 of the Penal Code declares that "If any person shall commit incestuous fornication or adultery, or intermarry within the levitical degrees of consanguinity, or within any of the relationships, by affinity, enumerated in section 2413 of the Civil Code, such person shall be punished," etc. The question in hand depends upon the meaning to be ascribed to the word "incest." The word is defined in the Standard Dictionary as "sexual intercourse between persons so nearly related that marriage between them would be unlawful;" in the Encyclopædic Dictionary as "criminal sexual intercourse between persons related within the degrees wherein marriage is forbidden by the law of the country." To the same effect see Webster's International Dictionary and Bouvier's Law Dictionary. It therefore seems clear that if a man has sexual intercourse with a woman with whom he could not, because of relationship by either consanguinity or affinity, lawfully contract marriage, such intercourse should be regarded as incestuous. Presumably, the lawmaking power intended the word "incestuous" to be understood as having the meaning given it in the standard lexicons; and accordingly, in view of our legislative provision forbidding a marriage between stepfather and stepdaughter, sexual intercourse between them is incestuous.

2. The record discloses that at a previous term of the court the accused was tried and convicted of the offense of assault with intent to murder, upon an indictment charging him with administering to Maggie McGuire certain medicines and also with using other means for the purpose of destroying a child with which she was pregnant. It further appears that he made a mo-

tion for a new trial in the case, the overruling of which by the trial court was reversed by a judgment of this court. See 105 *Ga.* 846. At the trial now under review, the accused filed a special plea alleging that he had once been placed in jeopardy for the identical offense alleged against him in the present indictment. This plea was based upon the facts recited above. The judge struck it, and in our opinion rightly did so. The present charge against the accused is of an entirely different and distinct nature from that embraced in the old indictment. Were it otherwise, it would still seem clear that the special plea was without merit. Inasmuch as the accused, upon his own motion, obtained a judgment setting aside the former conviction, it should really count for nothing, and the case should stand exactly as if there had been no trial at all upon the previous indictment. When, therefore, he was tried upon the indictment for incestuous adultery, there was simply another indictment for assault with intent to murder pending and undisposed of upon the docket; and this certainly presented no legal obstacle to placing him upon trial upon the indictment last found. The doctrine of lis pendens does not apply to criminal cases; and besides, the clause of our constitution forbidding any person to be put in jeopardy of life or liberty more than once for the same offense is distinctly qualified by the exception that this rule of constitutional right is not applicable when the accused, on his own motion, obtains a new trial after conviction. Civil Code, § 5705. In this connection another point made during the trial may be noted. Complaint is made that the judge erred in directing the solicitor-general to inform the jury that the accused had never been tried upon the charge made in the indictment for incestuous adultery. As this information was strictly accurate, we see no reason for any just complaint on this ground.

3. The court was requested in writing to charge the jury that in a case of incest the woman is an accomplice of the man, and that on the trial of an indictment against the latter for this offense her testimony is subject to the rule which requires the testimony of an accomplice to be corroborated. This request was fairly covered by the general charge given to the jury. In this connection, however, the court was further requested in

writing to charge that, to warrant a conviction based upon the testimony of an accomplice, "the corroborating circumstances should be such as, independently of her testimony, to lead to the inference that the defendant is guilty. Facts which merely cast on the defendant a grave suspicion of guilt are not sufficient." The rule on this subject was clearly laid down in the case of *Childers* v. *State,* 52 *Ga.* 106. It is, that the corroborating testimony must be such as goes "to connect the prisoner with the offense." This is certainly not accomplished when the testimony offered to corroborate the accomplice goes no further than merely to raise a grave suspicion that the accused committed the crime in question. The rule laid down in the *Childers* case has been repeatedly recognized as correct by this court. A recent instance of its so doing is found in the case of *Mc-Crory* v. *State,* 101 *Ga.* 779.

4. The court, over the objection of counsel for the accused, allowed Maggie McGuire to testify to acts of sexual intercourse between herself and the accused, occuring at a period of time when the offense thereby committed would be barred by the statute of limitations. We think this evidence was admissible, not, of course, as affording a basis for convicting the accused, but as tending to throw light upon the relations existing between the parties at a time within the statutory period. The following extract from 2 Greenleaf on Evidence (16th ed.), § 43, is pertinent: "Where criminal intercourse is once shown, it must be *presumed,* if the parties are still living under the same roof, that it *still continues,* notwithstanding those who dwell under the same roof are not prepared to depose to that fact." The court properly instructed the jury that the accused could not be convicted upon proof of acts of sexual intercourse between himself and Maggie McGuire occurring more than four years before the finding of the indictment, but in this connection committed a grave error by further instructing the jury, in substance, that if they believed her testimony to the effect that the accused had such intercourse with her "more than four years back," they might, if they saw proper, regard this as sufficient corroboration of her testimony that he had also had sexual intercourse with her within the statutory period. The effect of this

was to instruct the jury that one portion of the testimony of a witness who was an accomplice could be sufficiently corroborated by another portion of the same witness's testimony to warrant a conviction. This certainly is not the law. While the statements of Miss McGuire relating to criminal intimacy which took place years ago were admissible for the purpose of testing the accuracy of her statements as to more recent criminal conversation between herself and the accused, the statements first referred to can not be regarded as affording the kind of corroboration which the law makes necessary to support the testimony of an accomplice. Beyond question, the corroboration of an accomplice must come from a source or sources other than his or her own testimony. Were it otherwise, the rule as to corroboration would obviously be nugatory and worthless.

5. The court, in charging upon the subject of corroborating the testimony of Miss McGuire, also used the following language: "If you believe, gentlemen, that it has been shown to you by the testimony that she was at any time pregnant, of course that would show that she had had intercourse with some one. You may consider that, and, if you think it is sufficient corroboration, you would be authorized to find a verdict upon it." The error of this instruction is apparent. While it is manifestly true that, if the woman was at any time pregnant, she must necessarily have had sexual intercourse with some man, we are entirely unable to perceive how the mere fact of pregnancy would of itself alone connect Taylor with the perpetration of the offense charged against him in the present indictment. The fact that Miss McGuire became pregnant would not point to him as the guilty partner of her crime any more than to any other man who might have had an opportunity to have carnal knowledge of her person.

6. In portions of her testimony Miss McGuire stated that she had never consented to the illicit intercourse with Taylor, that in each instance it occurred against her will, and that she was forced to submit to his lustful embraces. Upon this testimony the court was requested in writing to charge the jury that if Taylor had carnal knowledge of Miss McGuire forcibly and against her will, the offense was rape and not incestuous adul-

tery.   This request was properly refused; for, taking the testimony of Miss McGuire as a whole, it is obvious that, if her testimony as to the sexual intercourse with the accused is true, she in fact consented to it, so doing however with that reluctance and disinclination which would naturally be felt by any young girl in sustaining such relations with her mother's husband.   In this connection see *Jones* v. *State,* 90 *Ga.* 616; *Mathews* v. *State,* 101 *Ga.* 547.

7.  During the trial, Embry, a physician, was introduced as a witness for the State.   His testimony, briefly stated, was in substance as follows:   The accused came to him, stating that his stepdaughter was suffering from a stoppage of her menses, and requested the physician to give her treatment.   He prescribed for her trouble, and gave the accused medicine to administer to her.   Subsequently the accused returned, stating that she had not been relieved, and then the physician made a visit to the girl. While there he proposed to subject her to a vaginal examination, to which Taylor objected.   Taylor manifested much concern as to the condition of his stepdaughter, and suggested to Embry the propriety of having her examined by some physician in Atlanta.   Upon a subsequent visit to Miss McGuire, Embry removed from her a placenta or afterbirth, but was unable to find the fœtus of which she had been previously delivered.   The sheriff of the county was also introduced as a witness for the State, and testified that he arrested Taylor upon a warrant placed in his hands for the purpose; that before he disclosed to Taylor what offense was charged against him in this warrant, the latter said with considerable perturbation that he was ruined and that the whole family was ruined, at the same time offering the sheriff money not to execute the warrant but to let him (Taylor) go.   All of the foregoing testimony of Embry and the sheriff was objected to as illegal and irrelevant.   We think this evidence was properly admitted.   While Taylor's declarations and conduct to which the physician testified might have been consistent with innocence, they are also consistent with guilt. If the jury saw proper to do so, they could have given to the physician's testimony the effect of directly connecting Taylor with the perpetration of the very offense with which he is

charged. The same thing is true as to. the evidence of the sheriff. The fact that Taylor offered the sheriff money tended strongly to show his guilt of some offense, and the further fact that in ignorance of the contents of the warrant he exclaimed that the thing would ruin him and his whole family would reasonably warrant the inference, when taken in connection with the other facts in evidence, that he had in mind a guilty consciousness of the fact that he had ruined the character of his stepdaughter for chastity. We do not mean to say that the evidence of either the physician or the sheriff constrained such conclusions as above indicated, but certainly it was sufficient to warrant a jury in drawing such conclusions, and was in all sufficient, if given this effect, to amount to proof of corroborating circumstances sustaining the testimony of Miss McGuire as an accomplice.

8. The court allowed Miss McGuire to testify that she had never had sexual intercourse with any man save the accused. This was objected to as irrelevant, and the objection was properly overruled. The fact that Miss McGuire had become pregnant was incontrovertibly established. In his statement Taylor positively asserted that he had never been criminally intimate with her. The theory of the State was that he had been, and certainly it was competent to prove by the woman, in support of this theory, that Taylor and he alone was the author of her ruin.

9. While Miss McGuire was under cross-examination, she was asked if she swore so and so on a former trial. The point was made and sustained that she could not be asked what she swore on the previous trial, without producing and reading to her the official report of her testimony as then taken down. We think this ruling was erroneous. Probably the rule would be different if Miss McGuire had been asked as to the contents of some writing signed by herself; and certainly before the official report or record of her testimony on a previous occasion could have been introduced for the purpose of impeaching her, it should have been produced and its contents made known to her, with full opportunity to explain or deny. See R. R. Co. v. Smith, 85 Ga. 530, and the cases there cited. But we know of

no reason why counsel should be compelled to confine themselves to this report in asking questions designed to test the sincerity of the witness or the accuracy of her memory.   For instance, counsel might with propriety and with such a purpose have asked her if she did not swear to something on a former trial, when he knew that she had not done so.   It is one thing to sift a witness and another thing to offer to impeach.   The right of subjecting a witness to a thorough and sifting cross-examination should not be unduly abridged, and we think the effect of the ruling now under consideration was to accomplish such a result.

10.  The court in its charge failed to make any allusion to the provisions of section 1036 of the Penal Code with respect to the right of the jury to recommend that the accused be punished as for a misdemeanor.  In *Johnson* v. *State,* 100 *Ga.* 78, this court held that the trial judge, whether so requested or not, ought to inform the jury, in a case to which it was applicable, of the provisions of this section so far as it related to their right to recommend.   While their recommendation would not be binding upon the judge, it would nevertheless constitute a persuasive influence which might result in mitigating the penalty to be imposed on the accused.   In *Johnson's* case a new trial was granted because of the failure of the court to give in charge so much of this section as related to the jury's right to recommend and the effect which might be given to it.   In the recent case of *Echols* v. *State,* 109 *Ga.* 508, this section was again discussed by Presiding Justice Lumpkin.   A new trial was not, however, granted in that case.   The verdict was right, and moreover the jury were informed of their right to make their recommendation, and in fact made it, the judge, however, not seeing proper to respect it.

In conclusion we wish to say that if Taylor committed the crime with which he is charged, his offense against a female of tender years, under his protection, and against the law of the land, was most odious and heinous, and he deserves severe punishment.   If we were satisfied that he had been given a fair, legal, and impartial trial, we would not hesitate to affirm the judgment.   The very fact, however, that the charge against him is so serious and one so well calculated to excite indignation

should render the courts doubly cautious to see to it that the trial is in every respect free from material error. Convinced as we are that Taylor has not had such a trial, we regard it as our solemn and bounden duty to award him another hearing.

*Judgment reversed. All the Justices concurring.*