### 5626. BAKER *v.* THE STATE.

1. Where the sole witness directly connecting the accused with the crime of burglary was an accomplice, the failure of the trial judge to instruct the jury what would, under the law, constitute an accomplice, or to define the term accomplice, is not reversible error, where it does not appear that there was a timely written request for such an instruction.

2. The failure of the court to charge the jury that evidence of moral turpitude was admissible for the purpose of impeaching a witness is not reversible error, where there was no written request so to charge.

3. Failure to charge the jury that they might consider the manner of a witness on the stand, and his interest or want of interest in the case, and his inducement or want of inducement to swear falsely, does not demand a new trial, where there was no written request for such an instruction.

4. To sustain a conviction upon the testimony of an accomplice, there must be corroborating circumstances which in themselves and independently of the testimony of the accomplice directly connect the defendant with the crime, or lead to the inference that he is guilty. *Childers* v. *State,* 52 *Ga.* 106; *McCrory* v. *State,* 101 *Ga.* 780 (28 S. E. 921); *Taylor* v. *State,* 110 *Ga.* 151 (3), 154 (35 S. E. 161). "Facts which merely cast on the defendant a grave suspicion of guilt are not sufficient." *McCalla* v. *State,* 66 *Ga.* 346.

DECIDED MAY 14, 1914.

Indictment for burglary; from Floyd superior court—Judge Wright. March 7, 1914.

*Eubanks & Mebane,* for plaintiff in error.
*W. H. Ennis, solicitor-general,* contra.

WADE, J. Jess Baker was indicted for the offense of burglary. At his trial M. C. Baker, agent for the Southern Railway Company and for the Southern Express Company at Lindale, Georgia, testi-

fied that a room in the depot of the Southern Railway Company, which was occupied and used by the Southern Express Company, was broken into and robbed on the night of October 31, 1913, and that four packages containing whisky, two of them weighing 50 pounds and valued at $10, and also a package of Woodruff's rye whisky, worth $10, were missing, and not to be found on the morning of November 1; that an iron bar in the rear of the office had been sawed, and the window raised and entrance into the room effected in that way. On cross-examination the witness admitted that he did not know of his own knowledge what was contained in the missing packages, but believed that they contained whisky because the packages were so marked and billed. He testified that the whisky was in the possession of the Southern Express Company at the time it was stolen. A boy of 15 years, one Gordon Ragsdale, testified that he accompanied Jess Baker, the defendant, on the night of October 31, to the depot at Lindale, and assisted him in sawing through the iron bar across the window, and entered the depot with him, "got the whisky, and took the whisky out a little piece and laid it down by the bank, and went from there to the stable," and there waited until Baker procured a horse and buggy and returned, put the whisky in the buggy, and carried it to Will Martin's house, about one o'clock at night. The witness further testified: "We got three or four packages of whisky;" and that the defendant gave him money to buy the hack-saws with which they sawed the bar; that the saws were bought at a certain hardware store in Rome from a man the witness described, and the defendant waited outside, across the street, until the witness returned with the saws; that the defendant told the witness, before the burglary, that he had made an arrangement to sell the whisky to Will Martin, and he did sell it to Martin at his house, immediately after the burglary, Martin paying him $17 for it, and agreeing to pay $3 more later; and that of this money the defendant gave the witness, as his part, $7, which the witness still had in his possession when he was arrested and placed in jail. This witness admitted that he had been charged with burglary twice in Rome, and that he had stolen certain watches from a house in Atlanta, and that in a former case of burglary he escaped punishment by "turning State's witness," and was put on probation by the trial judge; but he said he was not trying to escape in that way this

time. The sheriff of the county testified that after the burglary he found the stolen whisky at the house of Will Martin and took charge of it, and that Martin himself pointed it out; that he later arrested the defendant and also the witness Ragsdale, and found a couple of broken hack-saws on the person of the defendant. McCollum testified that he ran a livery-stable in Lindale about October 31, 1913, and hired a buggy to the defendant, between twelve and one o'clock on the night of the burglary, and that the defendant brought it back the next morning; that he did not see anything of the witness Ragsdale, and saw no signs of whisky in the buggy when it came back. Herbert McKinzie testified that he was employed by the Rome Hardware Company, and on October 31, 1913, he sold to a boy, who said his name was Ragsdale, two hacksaws, which were made to saw iron. The witness could not positively identify Ragsdale as the boy to whom he had sold the saws, but said that the boy was about twelve or fifteen years old, and was about the same size as Ragsdale. The defendant made a statement, in which he denied having anything to do with the burglary, but admitted he had hired a horse and buggy from McCollum's livery-stable on the night of the burglary, and had gone over to East Rome to a house there, returning about daylight to the stable. He denied being with Ragsdale, and denied any knowledge of the saws found in his pocket. No evidence was introduced in behalf of the defendant. The defendant was convicted, and made a motion for a new trial, on the general grounds and also on several special grounds, and upon the overruling of this motion he excepted.

There was testimony to sustain the material allegations in the indictment, but there was no direct testimony except the evidence of the alleged accomplice, and there were no corroborating circumstances directly connecting the defendant with the crime. By the evidence of the accomplice, Ragsdale, the burglary, the character of the goods stolen, and the monetary value thereof were sufficiently shown to meet the requirements of the law, and there was no material variation between the allegations and the proof. The indictment charges Baker with the offense of burglary, on a day named, by breaking and entering a certain depot house of the Southern Railway Company at Lindale, Ga., "where valuable goods were then stored, with intent to commit a larceny, the said intent being then and there to take and carry away, with intent to steal the same,

a package containing whisky, of the weight of fifty pounds and of the value of five dollars; a package containing whisky, of the weight of thirty-four pounds, and of the value of five dollars; forty-eight half-pint bottles of Woodruff's rye whisky, of the value of ten dollars, and of the goods of the Southern Express Company," etc. The testimony as to the identity of the property alleged to have been stolen, offered in behalf of the State, was as follows: "Somebody had been on the inside and stolen four or five packages of whisky. I checked up all the stuff on hand. This I found missing: four packages containing whisky, two packages weighing fifty pounds, valued at ten dollars. I missed a package of Woodruff's rye whisky; it was worth ten dollars. These packages of whisky were all sealed up, covered up entirely. I am just judging from the way they were marked, and the way-bills, what was in them. Of my own knowledge I don't know what was in them, never opened or examined the contents. The consignee said one of them had Woodruff's whisky in it. That was Harry Lemly, and that is the only way I know it. I knew it was whisky and Woodruff's whisky, because it was so way-billed. That is the only way I can tell you. That was the mark on the package and that is the law; you have to bill it on the package." The accomplice, in his testimony, frequently referred to the goods stolen as "whisky;" and the extent and accuracy of his knowledge concerning the actual nature or contents of the "three or four packages," which he testified he assisted the defendant in removing from the depot, and which he asserted the defendant sold to Martin, do not seem to have been questioned or inquired into, but the bald statement that the stolen packages contained "whisky" was received without investigation as to the extent of his knowledge, or his means of knowing whether or not the property stolen and sold to Martin was actually whisky. This, being direct and positive testimony, was sufficient proof of the identity of the property in question to meet the allegations in the indictment.

1. The first special ground of the motion for a new trial is that the judge failed to charge the jury as to what would, under the law, constitute an accomplice, and nowhere in his charge to the jury defined an accomplice, but left it to the jury to determine, both as a matter of law and as a matter of fact, what constituted an accomplice. No request for such a charge was made, in writing or

otherwise; and since the charge as a whole does not appear in the record, it is impossible to say what instructions, if any, were given by the court touching the evidence of an accomplice. It has been held that the trial judge, in his charge to the jury in a criminal case, should instruct them as to the general principles of law which must of necessity be considered in reaching a correct conclusion on the issues submitted. *Sledge* v. *State,* 99 *Ga.* 684 (26 S. E. 756); *Strickland* v. *State,* 98 *Ga.* 84 (25 S. E. 908). It is also well settled that where the judge has fully and fairly submitted the law applicable to the whole case, he is not required to give any further charge, however proper and legal, even when requested (*Georgia Railroad* v. *Thomas,* 73 *Ga.* 350); and also that where the court failed to charge on a particular line or theory of defense suggested by certain evidence (*Williams* v. *State,* 120 *Ga.* 870, 48 S. E. 368), or failed to charge on the subject of expert testimony (*Godwin* v. *Atlantic Coast Line Railroad Co.,* 120 *Ga.* 747, 48 S. E. 139), or the rules to be followed in dealing with conflicting evidence (*Green* v. *State,* 118 *Ga.* 755, 45 S. E. 598), or as to the relative value of positive and negative testimony in a case (*Scott* v. *State,* 117 *Ga.* 14, 43 S. E. 425), or on the law of confessions (*Cook* v. *State,* 9 *Ga. App.* 208, 70 S. E. 1019), or the law applicable in determining the credibility of witnesses (*Childs* v. *Ponder,* 117 *Ga.* 553, 43 S. E. 986), or on impeachment of witnesses (*Phillips* v. *State,* 121 *Ga.* 358, 49 S. E. 290), or to instruct the jury that they might consider the state of feeling shown by a witness towards the defendant (*Coody* v. *State,* 125 *Ga.* 295, 54 S. E. 180), such omissions or failures to charge would not require the grant of a new trial, in the absence of appropriate written requests.

Section 1017 of the Penal Code provides that the testimony of a single witness is generally sufficient to establish a fact, except in certain specified cases; and in any case of felony, where the only witness is an accomplice, corroborating circumstances may dispense with another witness. Section 1031 of the Penal Code declares that "all admissions should be scanned with care, and confessions of guilt should be received with great caution;" and also that "a confession alone, uncorroborated by other evidence, will not justify a conviction." It will be noted that both where the sole witness in a felony case is an accomplice and where a confession is depended upon to justify a conviction, and there is no direct testimony to

sustain the accomplice or the confession, there must be proof of corroborating circumstances in order to warrant a conviction. In *Eberhart* v. *State,* 47 *Ga.* 609, it is held to be a sound rule of law that "a free confession is very strong evidence of guilt;" and in *Hunter* v. *State,* 43 *Ga.* 484, it is declared that it is "not the duty of the court to classify the evidence as to its weight or consideration;" and this is undoubtedly true where there is no timely written request to do so. In *Cook* v. *State,* 9 *Ga. App.* 208 (70 S. E. 1019), the only special ground for a new trial was that the court failed to charge the jury that all admissions should be scanned with care, and confessions of guilt should be received with great caution; and it appears that in that case a free and voluntary confession of guilt was made by the defendant, and in the charge of the court no reference whatever was made to the subject of confessions. The court held that "though the evidence authorized a charge to the jury on the law of confessions, failure to instruct them on that subject, in the absence of an appropriate written request that they be so instructed, is not cause for a new trial;" and though in the opinion Judge Russell said, "We think that the evidence, outside of the testimony upon the subject of confession, was of itself sufficient to authorize the conviction of the defendant," he further said, "The defendant's confession, if believed by the jury to have been free and voluntarily made, completed the State's case, and required the conviction of the defendant." Further in the opinion he declared that "the Supreme Court has frequently decided that in the absence of a written request it is not reversible error to omit any reference whatever to the subject of confessions;" and cites the case of *Walker* v. *State,* 118 *Ga.* 34 (44 S. E. 850), where the Supreme Court held: "In the absence of a special request so to do, the court is not bound to charge Penal Code, § 1005, as to the weight to be given confessions." See also *Patterson* v. *State,* 124 *Ga.* 408 (52 S. E. 534), *Nail* v. *State,* 125 *Ga.* 234 (54 S. E. 145), *Pierce* v. *State,* 132 *Ga.* 27 (63 S. E. 792), and numerous other authorities. It appears to us that the decisions we have cited in regard to the omission to charge on the law of confessions, where a confession was involved, would apply with equal force to a failure to charge as to the weight and effect of evidence offered by an accomplice, and that if the one omission would be no cause for

the grant of a new trial, the other would stand exactly on the same footing.

2. The second special ground of the motion for a new trial is based upon the failure of the court to charge the jury that evidence of moral turpitude is admissible for the purpose of impeaching witnesses, since the evidence showed the witness Ragsdale to be a habitual burglar and thief. It appears that evidence was brought out on cross-examination of the witness himself as to his habits and past career; and it does not appear that there was any request to charge the jury on the subject of moral turpitude, as tending to impeach or discredit a witness. It seems to be settled by many rulings of the Supreme Court of this State, that failure to instruct the jury as to the law of impeachment of witnesses, when there is no request for such instruction, is not error; and in *Smith* v. *Page,* 72 *Ga.* 539 (3), it is held that "The weight to be given to the evidence of witnesses alleged to have been impeached is not one of the material questions in the case, without allusion to which the charge would be necessarily defective. It is only incidental or collateral to such material point, and, therefore, a failure to charge concerning it will not require a new trial, where the attention of the court has not been called to it, and no request to charge concerning it has been made." In *Cole* v. *Byrd,* 83 *Ga.* 207 (3), 211 (9 S. E. 613), it was held that "The court, without request, need not charge on the credibility of witnesses, or the mode of impeachment;" and in *Lewis* v. *State,* 91 *Ga.* 168 (16 S. E. 986), the court held that "failure to give in charge the rules laid down in the code as to the modes of impeachment, in the absence of a request so to do, was not reversible error." In *Millen & Southwestern Railroad Co.* v. *Allen,* 130 *Ga.* 657 (61 S. E. 543), it was held that failure to instruct the jury as to all the methods by which a witness may be impeached, so far as such instructions are authorized by the evidence, "will not require the granting of a new trial, where no written request was made to charge the jury as to the mode of impeachment omitted from the instructions upon the subject of impeachment of witnesses." See also *Hatcher* v. *State,* 116 *Ga.* 620 (42 S. E. 1018), and cases therein cited; *Strickland* v. *State,* 4 *Ga. App.* 445 (61 S. E. 841); *Roberson* v. *State,* 4 *Ga. App.* 833 (62 S. E. 539).

3. The last ground of the motion for a new trial is that the court omitted to charge the jury they might consider the manner of

a witness on the stand, and his interest or want of interest in the case, and his inducement or want of inducement to swear falsely. No request for such a charge appears to have been made, and much that is said above applies also to this assignment of error. In addition to what has already been said, it might be added that from the testimony of the witness Ragsdale, and from the entire record in this case, it does not appear that he had any interest whatever in the final result of the trial against Baker, since the witness testified that while he had previously escaped punishment by "turning State's witness," and had previously been put on probation by the trial judge, he was not seeking to escape this time the consequences of the crime committed jointly by the defendant and himself; nor does it appear from any other testimony in the case that any promise of immunity from punishment had been made to the witness, or that he was induced to testify in the case by any hope that leniency might be extended.

4. There was no positive evidence outside of that of the self-confessed accomplice, nor any circumstance proved which either directly connected the accused with the crime, or, independently of the testimony of the alleged accomplice, would lead to a legal inference that the accused was guilty. It is true the evidence of the livery-stable keeper shows that Baker hired a horse and buggy about the same hour that the accomplice Ragsdale testified the defendant procured a buggy to convey the stolen whisky to the house of Will Martin. It is also true that the sheriff testified that he found the stolen whisky at the house of Will Martin, to whom the accomplice testified the defendant had sold it, and that the sheriff discovered on the defendant's person two hack-saws of the kind that the accomplice said were used to saw the bar across the window of the burglarized house; and that McKinzie swore that he had sold to a boy of about the size and age of Ragsdale, who said his name was Ragsdale, two hack-saws on the day the accomplice testified that he bought them with the money and at the instance of the defendant; and it is likewise true that the agent of the Southern Express Company corroborated the evidence of the accomplice so far as it related to the fact of the burglary, and the manner in which the house was entered, the bar sawed, etc.; but no single circumstance proved necessarily establishes the inference of the defendant's guilt, or of itself tends to show any connection whatever between the defendant

and the crime; and, independently of the testimony of Ragsdale, the other circumstances proved would scarcely raise a bare suspicion of guilt. It is true that the testimony of Ragsdale fits all the corroborating circumstances proved, but, except for the outside evidence showing that the defendant hired a buggy on the night of the crime, all that Ragsdale said would have applied as' well to any other person as to the defendant, if Ragsdale had named another person instead of him. Ragsdale alone attempted to fix the crime on him or connect him therewith; no one else testified that the defendant was at or near the scene of the crime when the house was burglarized, that he ever had the stolen goods in his possession, conveyed, or sold them, or even that he was near when the hack-saws were purchased, or had knowledge of the purchase. The fact that the defendant had two hack-saws in his pocket when arrested might raise a suspicion of guilt, but certainly could not do more, since McKinzie testified it was a common thing to sell such implements, and in fact they were sold to the general public almost every day, and it is a matter of common knowledge, that such saws are used for many purposes other than the commission of burglary. Surely proof that the defendant hired a buggy on the night of the crime, and returned it to the owner the next morning, could not by itself raise even a legitimate suspicion against him, more especially since the owner of the team asserted that there were no signs of whisky in the buggy when it was returned. Had there been any testimony at the trial except the testimony of the accomplice, showing the possession of the stolen goods by the defendant or the sale thereof by him to Martin, this might sufficiently corroborate Ragsdale and support the conviction. *Pritchett* v. *State,* 92 *Ga.* 33 (18 S. E. 350); *Boswell* v. *State,* 92 *Ga.* 581 (17 S. E. 805); *Ford* v. *State,* 70 *Ga.* 722.

The rule laid down in the case of *Childers* v. *State,* 52 *Ga.* 106, and followed in *Hammack* v. *State,* 52 *Ga.* 403, and in *McCrory* v. *State,* 101 *Ga.* 779 (28 S. E. 921), seems to be fixed, definite, and inflexible, and it is settled beyond doubt by numerous other rulings, that, to warrant a conviction upon the testimony of an accomplice, the corroborating circumstances must be such as would lead to the inference that the defendant is guilty, independently of the testimony of the accomplice; that facts proved which cast on the defendant even a grave suspicion of guilt are not sufficient, and that

the corroborating testimony must connect the accused with the offense. *Taylor* v. *State*, 110 *Ga.* 150 (3), 153 (35 S. E. 161). In the case of *Blois* v. *State*, 92 *Ga.* 584 (20 S. E. 12), it was said: "Corroboration of an accomplice upon the facts and circumstances of the corpus delicti, when these facts and circumstances have no more tendency to fix guilt upon the accused than upon any other person, will not dispense with corroboration of that part of the testimony of the accomplice which goes to identify the accused as the perpetrator or one of the perpetrators of the crime. In the present case all the facts and circumstances (taken separately or collectively) relied upon as corroboration were consistent with innocence on the part of the accused, and were therefore insufficient to satisfy the rule of law which requires the evidence of a single witness who is himself an accomplice to be corroborated, and forbids conviction on a charge of felony upon the evidence of an accomplice alone." It seems to us that this quotation exactly covers the case under consideration; and since the connection between the crime and the defendant is not suggested by any evidence except that of the accomplice, and the corroborating circumstances alone fail in any way to identify the accused as one of the perpetrators of the crime, and do not tend to fix guilt upon him more than upon any other person, this conviction can not be sustained.

*Judgment reversed.*