## 6410. SMITH *v.* THE STATE.

"To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." Penal Code, § 1010. The evidence in this case was not sufficient to authorize the verdict.

. DECIDED MAY 4, 1915.

Accusation of manufacture of intoxicating liquor; from city court of Zebulon—Judge Dupree. February 9, 1915.

*Henry O. Farr,* for plaintiff in error.
*John F. Redding, solicitor,* contra.

WADE, J. When this case was formerly here for review (*Smith v. State*, 14 *Ga. App.* 610, 81 S. E. 817) the judgment of the lower court was reversed because certain physical objects referred to in the testimony for the purpose of identification, but not formally tendered in evidence for the purpose of having their admissibility passed upon by the court, were sent out with the jury, to be used by them as evidence in the consideration of the case, without any waiver on the part of counsel for the defendant. In the opinion the court said: "We are the more inclined to award another trial in the present instance because it is extremely doubtful if the evidence in behalf of the State, which is circumstantial in its nature, is sufficient to exclude every other reasonable hypothesis than that of the defendant's guilt." The court further said (p. 612): "Let it be admitted that it was the defendant who was present; there was no evidence that the still was on his land, and it was shown to be located a mile and a quarter from his home. He was lying upon the ground, with his back against a tree, and therefore was not apparently engaged, or about to be engaged, in the operation of the still. There was no evidence that he was in his working clothes, or in his shirt-sleeves, or that he had any interest in the still or its product; and it seems to us that it is perhaps as reasonable to infer that he intended to consume some intoxicant, acquired by gift or purchase, after its manufacture had been completed by the actual owner, as that he was a participant in the manufacture—interested in the ownership of the still, or its products." The evidence in the present record is substantially the same as that referred to above, with a few minor differences. At the former trial it did not appear that the still was on the defendant's land, there was evidence that it was "about a mile and a quarter from the defendant's home;" whereas at the last trial there was no evidence to show where the still was located, whether near by or far away from the home of the defendant. At the former trial it did not appear whether the defendant was "in his working clothes or in his shirt-sleeves," and at the last trial the evidence showed that he was in his shirt-sleeves between 9 and 10 o'clock in the morning of April 8, 1914 (the alleged date of the offense) ; and while the court, when the case was formerly here, intimated that evidence to the effect that the defendant was in his working clothes or "in his shirt-sleeves" might be a circumstance tending to show his criminal connection with the illicit man-

ufacture of spirits then being actively conducted by the negro apparently in charge, the court did not mean to intimate that proof of the defendant's garb alone would be sufficient to connect him with the commission of the alleged crime. The evidence on the former trial disclosed that the defendant dropped his hat when he fled from the neighborhood of the still on the approach of the officers, and the evidence at the last trial also shows this fact, and likewise the additional fact that the hat dropped by the defendant "had still slop all over it." Otherwise, as already stated, the evidence was the same as on the previous trial.

As was said when the case was here before, proof of flight alone "is not an incriminatory circumstance of sufficient probative value of itself to authorize conviction of crime." The fact that the defendant was in his shirt-sleeves might add some slight additional element of suspicion, but when it is remembered that he was thus garbed in April, a month when, as a matter of common knowledge, spring, in this State, is usually well advanced, and coats are more or less superfluous garments in bucolic localities, the absence of a coat does not necessarily suggest that he was at the still to assist in its further operation, or resting from labor already expended in that direction. It may be just as well supposed that he was on his way to some other locality and stopped to rest and observe the interesting process by which alcoholic beverages may be distilled from harmless and nutritious materials. A thousand and one reasons might be imagined to explain the defendant's presence, many of which would be entirely consistent with his innocence and no less reasonable than the theory that he was present in his shirt-sleeves to assist in conducting the illicit still. So, too, the fact that the hat dropped by him in his flight was covered with "still slop" does not necessarily connect him with the operation of the still itself. He may have been prying about and examining the various processes of manufacture for some time before the officers arrived, and may have accidently dropped his hat into a barrel of "slop" or "beer" without necessarily being concerned in the production of the "slop" or "beer," or the alcoholic product to be derived therefrom. The fact that he ran when the officer approached was also a suspicious circumstance; but on the other hand, if he accidently stopped by the place where the still was being operated, and, though realizing that he was witnessing an illegal performance, yielded to

curiosity, remained for a time to examine the still and its appurtenances, and finally deposited himself at full length under and behind a tree, perhaps to indulge in a morning nap, what is more natural than that, when suddenly interrupted by the officers running by him and seizing the person operating the still, and realizing that his very presence was in a measure compromising to him, he should have sprung to his feet and fled to the adjacent swamp, without even stopping to recover the slop-stained hat knocked from his head by an overhanging limb? The circumstances are certainly suspicious, and it may be conjectured that the defendant was guilty, but a conviction based on conjecture alone can not be allowed to stand, no matter how often separate juries may surmise the guilt of the defendant.

It is true that juries in criminal cases are judges of both law and the facts, but, as time and again declared, juries must take the law given them in charge by the court to guide and control them in the consideration of the evidence, and must apply to the evidence the rules of law so given. See *Pettigrew* v. *State,* 14 *Ga. App.* 462 (81 S. E. 446), and numerous cases there cited. Any finding of fact by a jury supported by some evidence must be allowed to stand; but where circumstantial evidence alone is relied upon to establish the guilt of one charged with crime, and such evidence fails to exclude every other reasonable hypothesis than that of the guilt of the accused, it is not only within the power of this court, but it is the absolute duty of the court, to set aside a verdict of guilty. In this case the evidence was altogether circumstantial, and consequently a conviction resting upon evidence which fails to come up to the standard prescribed by law and quoted in the headnote of this decision is contrary to law. Since the jury found by their verdict that the accused was actually present at the still, and there was some evidence tending to show his presence there, we treat the fact of his presence as established, notwithstanding the testimony introduced by him to show that he was at an entirely different place on the day charged in the indictment and testified about by the witnesses for the State.

There is no merit in the special assignment of error based on the refusal of the court to allow the introduction in evidence of a certain indictment, with a plea of guilty, and the sentence, in the case of one Harry Kendall, who was charged with the operation of the

identical still at the identical time and place with the defendant; since its introduction could not have thrown light upon the question of the guilt of the defendant in the present case; as in misdemeanors all concerned in the commission of the crime are principals, and the evidence that Kendall pleaded guilty as a principal would not tend to negative the idea that Smith was guilty of the same crime.

Nor is there any merit in the exception that the verdict was contrary to law because the jury recommended the defendant to the mercy of the court, and thereby indicated that they entertained doubt as to the guilt of the accused, but nevertheless refused to give him the benefit of that doubt as required by law. The fact that the jury recommended the accused to the mercy of the court does not necessarily imply that they entertained the slightest doubt as to his guilt, though a verdict with such a recommendation may often be a compromise verdict, and the inclusion of the recommendation may indicate on the part of some one or more of the jury a slight lingering doubt as to the guilt of the accused. It must be assumed that when jurors acting under their oaths finally return their solemn verdict in court, finding the accused guilty, all *reasonable* doubts resting upon their minds have been resolved, and they are *morally* certain of his guilt. Many extrinsic circumstances, ofttimes evidenced by the appearance, health, afflictions, deformities, or environment of the accused, may constrain the jury, in the exercise of human compassion, to ask the judge to extend such measure of mercy to the accused as may be consistent with his conception of duty and right, where the jury nevertheless feel compelled to find against the defendant on the bald questions of fact, and by their verdict declare him guilty of the charge they are impaneled to try.                    *Judgment reversed.*

BROYLES, J., dissenting. I think that the undisputed fact of the defendant's flight from the still in his shirt-sleeves, and the further undisputed fact that his hat was covered with "still slop," were some evidence of his guilt; and (as this court and the Supreme Court have uniformly held), where there is *any* evidence to sustain the jury's verdict, the discretion of the trial judge in upholding their finding will not be controlled.