7932. STOKES *v.* THE STATE.
</div>

To sustain a conviction upon the testimony of an accomplice, there must be corroborating circumstances which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty.

<div align="center">

DECIDED FEBRUARY 1, 1917.
</div>

Indictment for robbery; from Spalding superior court—Judge Searcy. October 21, 1916.

*Cleveland & Goodrich,* for plaintiff in error.

*E. M. Owen, solicitor-general,* contra.

WADE, C. J. Mattie Williams, Snet Banks, and Charlie Stokes were jointly indicted for the offense of robbery. The indictment alleged that the defendants did on a certain date, "with force and arms and unlawfully, wrongfully, fraudulently, and violently,

take and carry away from the person of T. N. Harris, and without his consent, thirty-five dollars in paper money and of the value of $35, the same consisting of two ten-dollar bills, one five-dollar bill, one two-dollar bill, and eight one-dollar bills, said money being in the possession of and the property of the said T. N. Harris, contrary to the laws," etc. Mattie Williams entered a plea of guilty, and the jury returned a verdict of guilty against Banks and Stokes. Stokes made a motion for a new trial, based upon the general grounds, and also upon two special grounds.

On the trial the prosecutor, Harris, testified that when on his way home at night and while passing under some trees, which shaded the sidewalk close to an unoccupied hotel and rendered that locality dark, he was "held up" and robbed by two men and a. woman, two ten-dollar bills, one five-dollar bill, one two-dollar bill, and several one-dollar bills, aggregating in all $35, being taken from his person. He testified that each of the two men caught one of his arms and pulled it behind his back and held him securely, and the woman then took his pocket-book out of his pocket, removed the money, put the pocket-book back in his pocket, and ran away; that the men then "slung" him around, turned him loose, and ran, and when they ran he "turned around and looked at them the best" he could; that the men did not face him, but came up on each side and jumped behind him and held his arms— one holding one arm and the other holding the other arm; that nothing was said to him before the money was taken, and not one word was spoken by any of the three persons; that he had never before met the two defendants on trial (Banks and Stokes), but the two men who engaged in the robbery would "compare with the size of these two men all right," and in his opinion they would "fill the bill all right," from what he saw of the robbers that night, and he was "satisfied" that these men were the parties. On cross-examination he repeated his testimony that neither of the two men on trial ever got in front of him, but that they stood be-. hind, pulling his hands back, while the woman removed the money from his pocket; that he recognized the woman as Mattie Williams, the defendant, but as it was dark at the time of the robbery, and the men had their backs to him when they turned and ran, he could not swear positively that the defendants on trial were the

men that committed the robbery; that he could not tell whether the men who held him were black or mulattoes, as he did not see their faces, but "only saw their sizes;" that "any man can tell what he imagines, if he was in the dark," and that what he imagined was "all of it except what [he] could see"—he "could not see anything but the size," he "could not see whether they were black or yellow," he "could not see whether they had a mustache," as he never saw the faces of either of the men, but "only had a glimpse, though not enough to say positively they were the parties;" that he did not tell the sheriff that he "could not tell whether they were the two men or not," but he would not say positively now that they were the men, as his attention was then fixed on the woman more particularly, in order that he might know some of the parties if he saw them again, and he was looking at her for that purpose; that his sight was not good, as one eye was gone and the sight of the other was poor. Mattie Williams testified against the two defendants on trial, and said that they were in fact the two men who robbed the prosecutor, Harris, with her help, detailing the circumstances of the robbery very much as did the prosecutor in his evidence. The sheriff, Hudson, testified, that he arrested the defendants Stokes and Banks on Tuesday or Wednesday following the robbery; that he found Stokes at one Ola Lester's house, where both Stokes and Mattie Williams lived; that Banks lived about 100 or 150 yards from that house, at the house of a sister of Ola Lester; that he found Banks near one John Taylor's store, going down the street when he went to arrest Stokes, and that "he [referring to Banks, and not to Stokes] ran and hid in a ditch and in some weeds and bushes; that it was about 50 or 75 yards from the house," where the witness found him; that Monday before the arrest and after the prosecutor, Harris, had told him of the robbery, the defendant Stokes came to him and told him that the woman Mattie Williams was "at their house drunk, and that she had robbed an old man, two or three nights before that, and wanted [him] to go down and get her;" that Stokes came to his house and told him this freely and voluntarily, without any threats on his part; that Harris described the woman, and identified her after the arrest, but told him that he "could not identify the men;" that Charlie Stokes told him that he had pawned a suit of

clothes to John Taylor and went there Monday and got them, and in response to his inquiry said that the woman Ola Lester had furnished him the necessary money, two or three dollars, had given him a ten-dollar bill, and got the change back, and this was the next morning after the robbery. It was admitted that John Taylor would testify, if present, that Charlie Stokes came to his store and got a ten-dollar bill changed, but there was no testimony tending to identify the bill as one of the bills taken from the prosecutor.

There is perhaps no better settled principle of criminal law in this State than that elaborated in *Childers* v. *State*, 52 *Ga.* 106, and adhered to without exception from that time to the present, that "to sustain a conviction upon the testimony of an accomplice, there must be corroborating circumstances which in themselves and independently of the testimony of the accomplice directly connect the defendant with the crime, or lead to the inference that he is guilty." *Baker* v. *State*, 14 *Ga. App.* 578 (4), 585 (81 S. E. 805). See also *Butts* v. *State*, 14 *Ga. App.* 821 (82 S. E. 375) ; *Taylor* v. *State*, 110 *Ga.* 150 (35 S. E. 161), and cases cited. It has been several times said that facts which create merely a grave suspicion of guilt are insufficient to furnish the necessary corroboration. *McCalla* v. *State*, 66 *Ga.* 346. Even where the facts in proof so far agree with the evidence of the accomplice as well-nigh to convert a grave suspicion against the accused into a moral conviction of his guilt, yet if these facts, when considered entirely apart from and independently of the evidence of the accomplice, fail in themselves, and without regard to the testimony of the accomplice, to connect the accused with the commission of the crime, a conviction is unauthorized. The practical test appears to be that if the facts and circumstances proved by testimony other than that of the professed accomplice could be as well applied, without the aid of the testimony of the accomplice, to some person or persons other than the person accused by the accomplice and pointed out by the evidence of the accomplice, the necessary connection between the defendant and the crime is not independently shown or established. In the case of *Baker* v. *State*, supra, many of the circumstances detailed by the accomplice were clearly established by other testimony, yet every circumstance thus

proved could have been admitted and no connection between the accused and the commission of the crime would be established unless the testimony of the accomplice be brought to its aid. It is true that the weight of corroboration is generally for the jury, but nevertheless the inflexible rule already referred to demands that there shall be some circumstances in proof, or some direct evidence from a witness other than the accomplice, which, entirely apart from and independently of the testimony of the accomplice, directly connects the defendant with the crime or leads to. the inference that he is guilty. In this case, leaving out of consideration the evidence of the accomplice, there is absolutely nothing that tends to connect Stokes with the commission of the robbery with which he was charged. The prosecutor could not identify him any further than to say that one of the actual robbers was about his size; and this description might fit ten thousand men as well as the defendant, and certainly was insufficient of itself to identify him as one of the perpetrators of the crime, especially in view of his disclaimer of recognition. Testimony that two ten-dollar bills were taken from the prosecutor and that the defendant Stokes changed a ten-dollar bill the day after the robbery, while perhaps calculated to excite suspicion, could not itself be sufficient to connect Stokes with the commission of the crime, as the bill changed was not in any way identified as one of the two bills of that denomination lost by the prosecutor, and it appears further that the defendant, with apparent frankness, alleged that he had procured the money from another person, and this statement was not denied.

It seems, from the evidence of the sheriff, that Banks fled at his approach; but even if this evidence referred to Stokes, whose trial is now under review, it is enough to say that proof of flight alone is not an incriminatory circumstance of sufficient probative value to authorize conviction of crime (*Smith* v. *State,* 16 *Ga. App.* 291, 293, 85 S. E. 281), and certainly in this case it did not tend to connect either Banks or Stokes directly with the commission of the robbery for which they were tried. See *Griffin* v. *State,* 2 *Ga. App.* 534 (58 S. E. 781). As was said in *Huey* v. *State,* 7 *Ga. App.* 398, 406 (66 S. E. 1023), "Flight may be a slight circumstance tending to show conscious guilt of some offense, but cer-

tainly it can not be sufficient proof of the particular crime charged. There must be other evidence of the particular crime, before flight becomes specially significant. Flight is but a confession implied by conduct, and can have no greater weight than actual confession by words." The fact that the accomplice testified that the accused said he had pawned his clothes with one Taylor, and proposed to get them out of pawn the next morning after the robbery, and proof that the accused had in fact paid Taylor two or three dollars and took certain clothes out of pawn on that date, would not show or tend to show that Stokes was one of the parties who committed the robbery, or had knowingly employed for that purpose money obtained from the prosecutor; for even accepting the testimony of the accomplice as true, this evidence would neither authorize an inference of his guilt nor connect him with the crime. There was no definite evidence in the entire record, excluding the testimony of the accomplice, from which the guilt of the accused could be inferred; and in the absence of any definite or positive identification of the accused as one of the robbers, all the circumstances in proof, whether considered separately or together, are insufficient, when weighed apart from the testimony of the alleged accomplice, to connect Stokes with the robbery; and while perhaps the circumstances in proof, when taken in connection with the evidence of the alleged accomplice, may tend to cast upon the defendant a suspicion of guilt, nevertheless, under the rule laid down in the *Childers* case, supra, the evidence as a whole did not authorize the conviction of the accused. We must therefore hold that the trial judge erred in overruling the motion for a new trial, since the sole question for determination by us is whether the accused was convicted in accordance with law, and not whether he may possibly be guilty or innocent of the charge preferred against him.

It is contended that the court erred in charging the jury that "a corroboration as to the identity of these defendants, or one of them, as the party or parties who committed the crime," if they found a crime was committed, would be sufficient corroboration of the testimony of the alleged accomplice. It is contended that this charge was error and prejudicial to the movant, because there were two defendants on trial, and the charge in effect authorized the jury to find them both guilty if the evidence of the accomplice,

Mattie Williams, was corroborated as to the identity of either of them. The excerpt complained of is somewhat inapt, and may possibly have been confusing to the jury, but the evident purpose of the court was to instruct the jury that they might find either defendant guilty upon other proof of his identity as one of the two persons named by the accomplice; and it is unnecessary to comment on this excerpt, since its lack of precision will doubtless be corrected on another trial.

The only remaining special ground of the motion for a new trial alleges error because the court instructed the jury as follows: "You take the law from the court, and you find the facts from the evidence in the case, including defendants' statement." This excerpt from the charge is complained of because the court referred to the defendants' statement, when in fact no statement was made by either defendant to the jury. This reference was doubtless made through inadvertence, and hence would scarcely recur on another trial; and since a new trial must be granted on the general grounds, it is unnecessary to determine definitely whether this slight reference to the defendants' statement was sufficient error to require a reversal. If comment by State's counsel on the fact that the accused failed to make a statement to the jury is improper and tends to injure the accused, it appears that such a reference by the court to the defendant's statement as might call the attention of the jury to his omission to make any statement would be perhaps even more injurious; but whether the reference made in the charge of the court in this case was sufficient to draw the attention of the jury to the fact that the defendant had made no statement need not be determined.

*Judgment reversed. George and Luke, JJ., concur.*