582

40559.   PATTERSON et al. v. THE STATE.

DECIDED APRIL 20, 1964.

C. *Winfred Smith, John N. Crudup,* for plaintiffs in error.

*Jeff C. Wayne, Solicitor General, C. Frank Strickland, Jr.,* contra.

RUSSELL, Judge. 1. A motion to rule out testimony of a witness who is a co-indictee on the ground that such testimony shows him to be an accomplice is not a legal ground of objection, but the argument will be considered in connection with the general grounds of the motion for a new trial which contend that there is insufficient corroboration to warrant a conviction. The State would by-pass this argument by the device of considering Dockery, the witness, not as an accomplice but merely an accessory after the fact whose testimony would need no corroboration. *Mills v. State,* 193 Ga. 139, 148 (17 SE2d 719). The difficulty with this view of the evidence is that Dockery's testimony relates to his movements in connection with those of Patterson, Ash, and Odom from early evening of the day when the car was stolen through the night and on into the next day when they were first taken in for questioning. While Dockery never in so many words stated that an automobile was stolen, or that he knew an automobile was stolen, or that he knew the parts hauled away were from a stolen car, or that the money handed him by Ash was a part of the proceeds of the sale of stolen goods, he did state that he had previously confessed to the crime, and his testimony as a whole is otherwise sufficiently incriminating to have authorized the jury to find that he did participate both in the

theft of an automobile and the disposition of its movable parts, and it does not tend to the conclusion that Dockery later discovered he was involved in the sale of stolen goods but was not aware at the time that an automobile was being stolen. His testimony is accordingly considered as that of an accomplice, the question being whether there is sufficient corroboration to warrant a conviction of Ash and Patterson.

Dockery testified that he went to Dahlonega on the night of July 30, met Odom at a girl's house; left at about 10:30 p.m., saw Ash and Patterson at a restaurant and left with Ash ("Q. Before you left was there any discussion with you about making any money? A. Not there. Q. Where did that discussion take place? A. I don't really know."); let Patterson and Ash out at a Texaco station (it does not appear how Ash rejoined the others); next met Ash and Patterson about midnight walking down a road where he and Odom picked them up (it does not appear when Odom made his first appearance); went to a cafe in Gainesville; let Patterson and Ash out at a bowling alley and returned to town and went back to get them a half hour later but found that they then had another car; followed them out the Dawsonville highway and past the Sardis Church; that he next saw Patterson and Ash walking on the road, and they went to the Copper Mines and slept until daylight after which he took Ash home and went back to town with the others; that about an hour later he, Patterson and Odom picked Ash up at a service station where Ash got a chain hoist. They went back to Dockery's house and procured a rifle; Dockery was left on the road with the rifle. ("I was supposed to shoot if I saw anything coming down through there.") At some time Dockery parked his car at the church and went about a half mile down the road in the direction where he had previously let the others out; they were at that time driving a truck down that road to pick up Odom and Ash. Patterson then said he would drive the truck; it ran out of gas and all four went to procure some gasoline for it in a bucket from a woman working in a service station. While driving the truck they turned off the road to avoid passing a weighing detail. All four went to a garage; Ash did the talking, returned and said, "We'll unload it right here." They unloaded

front end, doors and seats of a red car from the truck. Ash left, came back in about 15 minutes and gave each of the others $120. Ash and Dockery went back to the service station and purchased soft drinks, Dockery giving one of the $20 bills for his purchase. At an undetermined time during the night they procured a truck ("I don't know where we got the truck at. . . I drove it that evening.") After they got the gas they went to the garage. ("Q. When did you get out of the truck into your car? A. They was right there with us and they pulled in when we did and I just got over into my car. Q. You didn't know what was going on, did you? A. I did then—when we got over there . . . not before then . . . the night before I didn't know exactly what was going on.")

The State established that the automobile in question was stolen at about 11 p.m., taken to a spot back of the church mentioned in Dockery's testimony and dismantled, and was discovered the next day. One witness saw Dockery at the church at about 10:45 p.m., saw him return later with other persons whom he could not identify, and saw a truck with a tarpaulin over the back going down the road. The other corroborating witness was the woman at the filling station who identified all four co-indictees as having come to the station and procured a bucket of gasoline, and as having returned to the station in the early afternoon and purchased soft drinks, each of them paying for his drink with a $20 bill.

From all of this evidence it appears that Dockery did not confess to the crime of larceny of the automobile either on his own account or so far as the others were concerned, but all his testimony was consistent with and by inference supported the State's theory that the four persons involved stole the car, left it behind the church, got a truck, returned and stripped the car of parts, seats, fenders and so forth, and took them to a garage where they sold them and divided the proceeds. The only corroboration of the statement from which this inference must be drawn is (1) that a red automobile was stolen, (2) that the *witness* was seen in the vicinity of the church with unidentified parties, and (3) that the four defendants picked up gas for a truck the next morning and about three hours later each had a $20 bill.

Under *Code* § 38-121 the testimony of an accomplice is insufficient to sustain a conviction unless corroborated. The corroborating evidence must in and of itself, independently of the testimony of the accomplice, connect the defendant on trial with the commission of the crime and tend to show his guilt. The three facts adduced—that Dockery was at the church; that the four were together the next morning, and that each had a $20.00 bill the next afternoon—are not sufficient separately or together to connect any of the other defendants with the crime. *Whaley v. State,* 177 Ga. 757 (2) (171 SE 290) ; *Wiggins v. State,* 80 Ga. App. 258 (3) (55 SE2d 842) ; *Stokes v. State,* 19 Ga. App. 235 (91 SE 271) ; *Thompson v. State,* 52 Ga. App. 105 (182 SE 414) ; *Taylor v. State,* 110 Ga. 150 (3) (35 SE 161) ; *King v. State,* 77 Ga. App. 720, 722 (49 SE2d 790) ; *Sanders v. State,* 46 Ga. App. 175 (167 SE 207). The trial court erred in overruling the motion for new trial on the general grounds.

2. Special grounds 1 and 2 are identical with and are disposed of in *Ash v. State,* 109 Ga. App. 177 (135 SE2d 507). The remaining special ground, not being argued, is treated as abandoned.

*Judgment reversed. Nichols, P. J., and Hall, J., concur.*