Childers *et al. vs.* The State of Georgia.

Under section 3755, of the Code, which is as follows: "The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases—such as to convict of treason, or perjury, in any case of felony where the only witness is an accomplice, and to rebut a responsive statement in an answer in equity; in these cases, (except in treason,) corroborating circumstances may dispense with another witness:"

*Held,* that in a case of felony, where the only witness implicating the prisoners in the crime, was himself avowedly guilty, the corroborating circumstances necessary to dispense with another witness must be such as go to connect the prisoner with the offense, and that it is not sufficient that the witness is corroborated as to the time, place and circumstances of the transaction, if there be nothing to show any connection of the prisoners therewith, except the statement of the accomplice.

WARNER, Chief Justice, dissented.

Criminal law. Accomplice. Witness. Evidence. Before Judge RICE. Clarke Superior Court. February Adjourned Term, 1873.

Robert Childers, Derry Crane, *alias* Derry Harris, Sandy Boothe and Frank Lee, were placed on trial for the offense of robbery, alleged to have been committed upon the person of William T. Green, on May 18th, 1873. The defendants pleaded not guilty.

William T. Green, the prosecutor, testified, in substance, as follows: On the 16th day of May, 1873, about twelve or one o'clock at night, he was knocked down and robbed of $275 00 in United States currency, and one silver watch, valued at $30 00. The robbery took place at the upper bridge

in the town of Athens, Clarke county. As he came over Sandy Creek bridge he was whistling. The distance from Sandy Creek bridge to the upper bridge, where he was robbed, is about one and a half miles. Witness heard murmuring of voices, but did not recognize any of the parties owing to the darkness and the suddenness with which he was knocked insensible. When he recovered he went to Robert Lampkin's, a hotel in the town of Athens, and there told of the robbery.

The principal witness for the State was Charles Lee, colored, an accomplice. He testified as follows: On the night of the robbery I met Sandy Boothe, who asked me when Mr. Green was coming down to pay off the hands. I told him he was coming down in the morning at nine o'clock. Sandy asked me didn't I think me and him could make a "Jack" on him; I told him that I did not want to bother Captain Green; he always treated me like a gentleman. Sandy says: When he comes down he always brings $300 00 or $400 00 with him. Sandy told me to go to Sandy Creek bridge and wait until I saw Captain Green coming, then run back and let him know. After talking awhile I went. I waited until I saw Mr. Green coming, when I went back to the upper bridge, and saw all the defendants, and three others I did not know. As Mr. Green came across Sandy Creek bridge he was whistling. I told Sandy he was coming; I got there about ten minutes before Mr. Green; defendants took me up in their arms, and patted me, and said I was the boy for them; Sandy said he knew I was pretty good on a rock; I went in the gully and got a rock. When Mr. Green came up to the bridge, and when about five steps in the bridge, I threw at him, but missed him. Sandy Boothe jumped in between me and him and knocked him down; started to hit him a second time, but was prevented. Sandy struck him on the back of the head; Sandy, Derry and Frank jumped on him and searched him; Sandy took from his pocket $275 00 and a silver watch. Childers was standing in the road with his pistol, and said he would "shoot any d—d police that would run on him." Sandy called me up and gave me a $50 00 bill

for a $20 00 bill; While Sandy was searching him, Sandy said : "Boys, I believe he is dead ; let's throw him in the river." I told Sandy I would not do it. I thought they had done enough. Bob Childers came up and got the watch, and put it in his pocket. Mr. Green was knocked down with a persimmon stick, big enough to knock down a cow—about two inches in diameter. When I told them to not throw Mr. Green into the river, Bob Childers told me if I told it he would kill me. We then went across the bridge and tried to divide the money, but could not. All agreed to hide it until morning. Four of the defendants got hold of a rock and turned it over, and put all the money together under it. I gave up the $50 00 given me. By the light of a match they looked at the watch and it was a quarter to two o'clock. They all said that they would keep the money hid three months, and then they would put up a grocery. One fellow was there they called Ben King. They told him that if anything occurred to take the money and hide it. Next morning I went to the rock and found it turned over and the money gone. Witness swore positively to all the defendants. When arrested by the police I told them these facts. Bob Childers told me if I told about the robbery he would kill me. No other such threats were made to me. Sandy struck with the stick nearly simultaneously with my throwing the rock. Childers was not staggering, and I never smelt whisky on him. I know Mr. Hendricks ; he guarded me in the station house. I deny telling Mr. Hendricks that I told a lie to the police as to the whereabouts of the money when I was in the station house. I did not tell George Moore in the station house that Bob Childers had nothing to do with the robbery, or was not present. There was some little time after I threw the rock before Sandy struck Green. Green had time to get near the end of the bridge before Sandy struck, after I threw the rock. I was hiding out, and afraid to come into town until night on account of a difficulty I had got into.

S. H. Harper testified that he had charge of Charles Lee as an officer ; went with him to the place where he said the money was put under the rock. Saw the rock had been

Childers *et al. vs.* The State of Georgia.

moved. He went straight to the rock without hesitation. Showed him a persimmon stump where a stick two inches thick had been cut.

B. F. Culp testified that he went to see the rock; it had been moved; had a hole under it with green leaves in it. It was a very large rock; one man could not move it; three or four might easily do so. The rock looked as if something had been secreted under it. The morning after Mr. Green was robbed, Sandy Boothe seemed to be very uneasy; Sandy said he thought Charles Lee was guilty of the robbery.

John Cooper testified that the morning after the robbery Sandy Boothe wanted to hire a horse and buggy to go in the country; never had wanted a horse and buggy before in the week. Said he had money to pay for it.

W. S. Holman testified that shortly after the arrest of Boothe, Lee and Harris, he was placed in charge of them and that Robert Childers came into the room and wanted to talk to them. Witness would not permit it. Childers had not then been arrested. He said if he could have a talk to them he could find out something. Charles Lee was in another room,

FOR DEFENSE.

W. J. Moreton, W. B. Pruitt, Joseph Emerick, R. T. Pittard, L. W. Holbrooks, Mat. Davis, Thad. Boyd, M. Beal, Andrew Jackson, Sloan Brown, Ben. Thomas, Charles Hill, and A. L. Mitchell, testified that they knew the general character of Charles Lee; it was bad; he was a thief, highway robber, and they would not believe him upon oath.

George Moore testified that Charles Lee told him that Bob Childers was not in the robbery, and had nothing to do with it; don't know that he was exactly sober, but remember what he said.

Mrs. E. Childers, sworn, says: I am the mother of Bob Childers. I remember the night the robbery was committed. Bob was very drunk that evening at 7 or 8 o'clock. I put him to bed about half an hour after he came in. I had not gone to sleep when the cars left at half-past nine. I was up

two or three times during the night. He was on the bed asleep at those times, and was there at daylight. He could not have gone out without passing my door, and I would have heard him. Bob's bed was in sight of mine. I slept some that night.

FOR THE STATE, IN REBUTTAL.

James D. Pittard, M. P. Davis, A. T. Luckie and A. S. Dorsey, testified that they knew the character of Charles Lee. That he was a thief and a robber; nevertheless, they would believe him on his oath.

The jury found the defendants guilty. A motion was made for a new trial, because the verdict was contrary to the law and the evidence. The motion was overruled and defendants excepted.

T. W. RUCKER; C. D. HILL, by B. H. HILL & SON, for plaintiffs in error.

EMORY SPEER, Solicitor General, for the State.

MCCAY, Judge.

Our Code, section 3755, provides as follows: "The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases; such as to convict of treason or perjury, in any case of felony where the only witness is an accomplice, and to rebut a responsive statement in an answer in equity. In these cases (except in treason,) corroborating circumstances may dispense with another witness."

In the case made by this record, which is a felony, the sole witness connecting the defendants with the transaction is one who admits that he was one of the robbers, and there are no circumstances proven by other witnesses corroborating his statement that the prisoners were with him, or that they were connected, in any way, with the commission of the crime. It is contended, however, that as other witnesses do prove there was a robbery, and that the time, place and circumstances

Childers *et al. vs.* The State of Georgia.

were such as stated by the witness, this amounts to such corroborating circumstances as fulfill the terms of the Code, leaving the *weight* of these circumstances to be determined by the jury.   A majority of the court are of the opinion that such circumstances, however numerous and detailed, are not corroborative circumstances in the sense of the Code; that the first to be established is the connection of the prisoners with the crime, and that the "corroborating circumstances" intended by the Code are such as go to show that the prisoners were, in some way, implicated in, or connected with, the robbery. That the witness himself, who comes avowedly before the court as a perpetrator of the crime, should be able to tell the time of night, the manner of the crime, that more than one were engaged, the amount stolen, etc., etc., is corroborative of his own guilt, and is involved . in the very admission that he is an accomplice.   But that he tells the truth about such things as these is, as it seems to us, *nothing* going to show that the prisoners are guilty, and do not at all corroborate his story implicating the defendants.   And this is, in our judgement, really the only thing in issue, "the fact to be established."   This section of the Code is peculiar and significant in the language it uses.

It sets out with the statement that ordinarily one witness is sufficient to establish a fact.   It then declares there are exceptions to this rule.   It mentions treason as an exception, and then perjury, cases of felony where the only witness is an accomplice, and finally where it is undertaken to rebut a responsive statement in an answer to a bill in equity.   In these cases, except in treason, corroborating circumstances *may dispense with another witness.*

It seems to me that it is difficult to read this language without coming to the conclusion that more is intended than that the one witness, the accomplice, shall tell a reasonable story ; that he shall show that he knows a crime was committed, and tell truthfully the time, place and manner of it, as they are known, perhaps, to half the community, by the story of the person wronged, or by the traces which almost every crime

leaves behind. As I have said, it seems to me, these words of our law mean something more than this, and that their language can only be met by requiring proof from other witnesses of facts going to show that the persons on trial, whose guilt-is the only fact to be established, are implicated in the crime. Nothing else is *any* corroboration of the fact in dispute. Nobody denies the guilt of the witness; that fact needs no confirmation. He goes upon the stand avowing that the whole point of the case is the guilt of the persons on trial, and nothing which does not tend to confirm his story, as to them, can be fairly spoken of as corroborating the evidence he gives as to the fact to be established.

It will be noticed that the statute does not say that the jury shall not convict on the testimony of one witness. The provision is that a "fact" cannot be-established thus. The significant, controlling, vital fact of this issue is not the robbery, not the time, place or manner of it. Had that been the question, this witness would not have been put up at all. The person on whom the outrage was committed was present and a witness. Not a single new fact of a material character, except his own presence, is stated by the witness; and at last this verdict is founded, the fact of the guilt of these prisoners is taken as established, solely on the statement of the accomplice. It is trifling with the principles of justice to say that the circumstances in reference to Sandy Boothe, as that *he* first suggested the guilt of the witness, that he tried to hire a buggy next morning to go into the country, and said he had the money to pay for it, are facts going to show his guilt. His pointing to the prisoner strikes me as a strong fact in his favor, and suggests a motive for the witness to turn the tables on the one who put the officers after him, and the other facts may be true of one hundred men in Athens that very morning, and are worthy of no attention. Indeed, the whole argument here has been on the assumption that there is nothing to show the guilt of the prisoners but the statement of the accomplice, and the conviction is sought to be sustained by insisting that, under the law, circumstances confirmatory of the witness' gen-

eral narrative are sufficient, though those circumstances do not at all tend to connect the prisoners with the matter.

For myself, I cannot so read the Code. Its language is, to my mind, plainly to the contrary. Its suggestion, that these circumstances may dispense with another witness; its classification of the case with cases of treason, perjury, and rebutting an answer in equity, impress me overwhelmingly with the idea that there must be more evidence of the guilt of the defendants than the prisoner's statement; that the corroborating circumstances must be cumulative, that they must add to the testimony of the accomplice. In other words, I think our law—this section of the Code—requires more evidence of the guilt of the prisoners than the oath of an accomplice.

The facts of this case, as detailed by the accomplice, are simply the robbery, and its details; and he says that the prisoners were there. The other witnesses say *nothing* implicating the prisoners at all, even the most remotely. A majority of this court think this is no corroboration at all of the *fact in issue*, to-wit: the guilt of the defendants. In England, the law upon this subject is in a very uncertain condition. It is laid down in all the books that even in felonies it is *competent* for the jury to convict on the uncorroborated evidence of an accomplice, and there are several cases where a new trial has been refused when this was the case. On the other hand, it is a well recognized rule for the court, on the trial, to tell the jury that they *ought* not to convict unless the witness is corroborated. In other words, there is no *rule of law* on the subject. The courts *advise the jury* what is right and proper, but at last, whether a conviction shall be had or not, depends on the opinion of the jury, and the judges let the verdict stand or not, accordingly as they think upon the whole the defendant is guilty or not. But even under this very uncertain rule, it is our conviction that the great burden of authority is, that the judges advise the jury not to convict unless the accomplice be corroborated, not generally, but in that part of his story which connects the prisoner with the offense.

Whilst we are not able to see what this practice of the Eng-

lish judges, as to their advice to the jury as to the weight of evidence under a rule of law which *authorizes* the jury to convict without *any corroboration*, has to do with the construction of our statute which declares, as a rule of law, that in cases of felony the evidence of an accomplice is not sufficient, still, as much stress was, in the argument, laid on this practice, I propose briefly to discuss it.

As we have said, it is competent in England for a jury to convict even of felony, on the uncorroborated evidence of an accomplice: Per Lord DENMAN in Hastings' case, 7 C. & P., 152. But it has long been the practice of judges at *nisi prius*, to advise the jury that they ought not to convict if the accomplice be uncorroborated. There is, however, some uncertainty as to the precise terms in which it has been the custom to give this advice. The truth is, the terms have not always been the same, and that, for the simple reason, as it is mere advice, and not obligatory either on the judge to give or the jury to adopt it, and not the subject of review, (see Regina vs. Stubbs, 33 E. L. & E. R., 551), it has always depended on the temper and tendency of the mind of the particular judge presiding at the trial, and has not been, and cannot be, precisely settled, because no reviewing court can define and precisely mark it out. Still I think, as I have said, that the large balance of the English cases state the practice to be to advise the jury not to convict unless the accomplice be corroborated in his statement connecting the prisoner with the crime. The practice is so stated by Roscoe, 155 to 157, by Philips, 1 Phil. Ev. 30, by Wharton, American Criminal Law, sec. 789, and is elaborately defended by Amos & Philips in their note to the 8th Ed. of Philips. See that note in full in COWEN's Notes to Philips, Part 1, 20 to 23. In these text books the authorities are quoted, that is, the cases in which the advice was given, and I refer to them simply, without taking the trouble to set them out in detail. Against this is the essay of Baron JOY, late chief baron of his majesty's court of exchequer, in Ireland.

The preface to this essay states the object of the book to be

to show that certain opinions of judges, to-wit: two cases *lately decided*, in which the terms of the advice to be given to juries are stated as requiring confirmation, as to the connection of the prisoner with the crime, do not state the law correctly. Those two cases are Rex vs. Addis, 6 Car, & P., 388, and Rex vs. Webb, *Ibid.*, 595.

The text of the essay contends elaborately: First, that there is no rule of law on the subject; and second, that the practice of the judges has been to give the advice simply to the effect that there must be confirmation, without limiting the corroboration to any particular part of the testimony. It will be found, however, that whatever may be the rule as deduced from the cases referred to by Baron Joy, the English judges have continued to give to the juries the advice given by Patteson, Judge, in 6 Carr. & P., 388, and in 6 Carr. & P., 595, by Justice WILLIAMS, which it was the object of the essay to show was not law. And a careful reading of the essay will, I think, show that Baron Joy has, in the cases he referred to as supporting his view, laid too much stress upon those cases which hold that there is no *rule of law* requiring any corroboration, and has not given due weight to the practice of the judges in their charges to the juries, which, in truth, is the only force the rule has in England at all. In Wilkes' case, 7 Carr & P., 272, after the publication of Baron Joy's essay, ALDERSON, B., in summing up, said, "The confirmation of the accomplice, as to the commission of the felony, was no confirmation at all. And the confirmation which he always advised juries to require, was in some fact which went to fix the guilt on the particular persons charged." And in Moore's case, 7 C. & P., 270, the same judge told the jury that where a thief and a receiver were jointly charged, a confirmation, as to the thief, did not advance the case against the receiver. In 8 Carr & P., 106, Lord ABINGER said he was clearly of the opinion that the corroboration of the accomplice must be as to the particular prisoner. In 8 C. & P., 261, GUERNEY, B., held that in a majority of recent cases it was laid down that the confirmation must be of some matter which went to con-

nect the prisoner with the transaction.   In Regina vs. Stubbs, 33 Eng. L. & E. R., a case decided in 1855, twenty years after the publication of Baron Joy's essay, in a reserved case before the court, the point was whether a conviction was legal, on the evidence of an accomplice, entirely uncorroborated.   The court held that it was.   Jarvis, C. J., said they regretted the conviction because it was contrary to the ordinary practice. The judge had charged that if the accomplice was corroborated as to one prisoner, that was sufficient to justify the conviction of the others, and the jury had convicted.   And he added : " It is not a rule of law that the judge must tell the jury corroboration was necessary.   But it is the practice to advise the jury they ought not to convict without it.   And I think it is proper for the judge to tell the jury it is not safe to act on his testimony, as to any prisoner, with regard to whom he is not confirmed." Park, B., said : "My practice has always been to tell the jury not to convict the prisoner unless the evidence of the accomplice is corroborated, not only as to the circumstances of the offense, but also as to the person of the prisoner." Creswell, Judge, said: " I have always acted upon the view of the subject presented by my brother Park." Wightman, J., said : "The practice had not been uniform," and Welles, J. said : " This is not a question of law but of practice, and questions of law only can be reserved for our opinion."   That there should be some diversity of practice in a matter which could not be reviewed, is not strange.   But here is the opinion of a majority of the judges of the courts of queen's bench, the highest criminal court in England, as to what the rule under discussion is.

As I have said, it is not clear how a matter of advice only to the jury can be used to aid in the construction of a positive rule of law, as laid down in our Code.   Still, as I have shown, even this rule of advice conforms to the view we have taken.

It may be these men are bad, guilty men, but if they are convicted, it ought to be under the rules of law.   To justify this verdict would be, in our judgment, to make the best men

Childers *et al. vs.* The State of Georgia.

in the land subject to the danger of conviction by any guilty scoundrel who might attack them.   His guilt is easily corroborated.   The rule is, and ought to be, that *some facts* must be shown by other witnesses, tending to show guilt in the person on trial.

Judgment reversed.

TRIPPE, Judge, concurred, but furnished no opinion.

WARNER, Chief Justice, dissenting.

The defendants were indicted for the offense of robbery, upon the person of William T. Green, in the county of Clarke, on the 15th day of May, 1873, and taking from him $275 00 and a silver watch.

On the trial of the case, the jury found the defendants guilty.   A motion was made for a new trial on the grounds specified in the record, which was overruled by the court, and the defendants excepted.   There is no controversy as to the fact that Green, the prosecutor was knocked down in the night time with a club and robbed of his money and watch, as alleged in the indictment.   The main witness for the state, who proved the robbery by the defendants, was Charlie Lee, an accomplice, but who was not indicted, and the question is, whether there were sufficient corroborating circumstances proven by other witnesses at the trial to authorize the jury, under the law, to find the defendants guilty on the evidence of the accomplice.   By our Code, the testimony of a single witness is generally sufficient to establish a fact.   One of the exceptions to this general rule is in any case of felony where the *only witness* is an accomplice, and in such a case corroborating circumstances may dispense with another witness: Code, 3755.

The fair and reasonable interpretation of this section of the Code is, that if the corroborating circumstances proved by other witnesses are sufficient to authorize the jury to believe that the accomplice has told the truth in relation to the commission of the offense, such corroborating circumstances may dispense with another witness, and a conviction may be had

on the testimony of the accomplice.   What the corroborating circumstances shall be, the Code does not define.   The object of all legal investigation is the discovery of truth, and when the jury are satisfied, from corroborating circumstances proved by other witnesses, that the accomplice has told the truth, why should not a conviction be had upon his testimony?   Independently of the provisions of our Code, Professor Greenleaf states the rule to be that the degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury.   It has sometimes been said that they ought not to believe him unless his testimony is corroborated by other evidence, and without doubt, great caution in weighing such testimony is dictated by prudence and good reason.   But there is no such rule of law, it being expressly conceded that the jury may, if they please, act upon the evidence of the accomplice without any confirmation of his statement.

But on the other hand, judges, in their discretion, will advise the jury not to convict of felony upon the testimony of an accomplice alone, without corroboration, and such is now the settled course of practice: 1 Greenleaf's Ev., sec. 380. Chief Baron JOY, after a thorough examination of the English authorities upon this question, states the rule to be, " that the confirmation ought to be in such and so many parts of the accomplice's *narrative* as may reasonably satisfy the jury that he is telling the truth, without restricting the confirmation to any particular points, and leaving the effect of such confirmation (which may vary in its effect, according to the nature and circumstances of the particular case,) to the consideration of the jury, aided in that consideration by the observations of the judge:" Joy on the Evidence of Accomplices, 98, 99. The rule as stated by Chief Baron JOY, is the rule which should be applied in the construction and interpretation of the 3755th section of the Code, in relation to the evidence of an accomplice in cases of felony.

Now let us examine the evidence in the record and see whether there are any corroborating circumstances confirmato-

ry of the accomplice's narrative of the transaction, proved by other witnesses, which might have reasonably satisfied the jury that he told the truth, as required by the rule of law before stated, so as to dispense with another witness. The accomplice, Charlie Lee, swears positively that the defendants committed the robbery, and states in detail the time, place, and manner in which it was done. The prosecutor, Green, was a contractor on a railroad, and had come to town to pay off his hands. Lee, the accomplice, states that, in accordance with a pre-concerted arrangement, the parties defendant, as well as himself, waylaid the prosecutor at Sandy Creek bridge; that they heard him coming across the bridge whistling; that when he got near the end of the bridge, the witness threw a rock at him, but missed him. Boothe, one of the defendants, then struck him on the back of the head with a large club; knocked him down, when three of the defendants jumped on him, searched him, and took from his pockets $275 00 and his watch; the other defendant, Childers, was standing in the road with a pistol, and said he would shoot any damned police who would run on him; states that there was a $50 00 bill taken from the prosecutor, which was given to him for a $20 00 bill; they tried to divide the money, but could not; agreed to put it all together and hide it for about three months. Witness gave up his $50 00 bill, and they buried it altogether under a rock; all four of them took hold of the rock and turned it over. The next morning witness went to the rock under which the money had been buried, and it had been turned over and the money was gone. Childers took the watch. Green, the prosecutor, states that he was going across the bridge whistling at the time he was knocked down and robbed; that he had $275 00 on his person at the time, a part of which was one $50 00 bill; at the time prosecutor was knocked down he heard a mumbling of voices, or as he states it in another place, a buzzing of voices. Harper states that after Lee, the accomplice, was arrested, he went with him straight to the rock under which he said the money was buried; also showed the persimmon stump from which he said the club was

cut by Boothe, about an inch and three-quarters or two inches thick. Culp states, he went and saw the rock; it had been moved; had a hole under it, with green leaves in it; looked as if something had been secreted under it; it was a very large rock; witness could not move it; thinks three or four men could move it. The theory of the counsel for the defendant's is.that Lee, the accomplice, committed the robbery himself, and as a matter of course knew all the facts. But the prosecutor states that at the time of the robbery, he heard a mumbling or buzzing of voices, clearly showing that there was more than one person there, thus corroborating the statement of the accomplice that there were five of them engaged in it.

Again, the accomplice states that one of the bills they got from the person of the prosecutor was a $50 00 bill. The prosecutor swears that amongst the money of which he was robbed there was a $50 00 bill, thus corroborating the evidence of the accomplice, and also corroborating the statement of the accomplice as to the aggregate amount of money taken from him, to-wit: $275 00. The accomplice stated that when the prosecutor was coming across the bridge, where he was robbed, they heard whistling. The prosecutor swears that he was whistling at the time, thus corroborating the evidence of the accomplice. The accomplice states that after the robbery four of them got hold of a rock and turned it over and put the money under it, and the next morning the rock had been turned over and the money gone. The witness, Culp, corroborates this statement as to the size of the rock, that one man alone could not have turned it over, that three or four might have done so, thus corroborating the truth of the accomplice's statement that there were other persons engaged in the robbery besides himself.

There are other circumstances proved by other witnesses; that on the morning after the robbery, Boothe, one of the defendants, seemed to be very uneasy, and said he thought Charlie Lee was guilty of the robbery, wanted to hire a horse and buggy to go into the country; said he had the money to pay for it. Childers, after some of the defendants had been

arrested, came up and wanted to ask them questions; said if he could be allowed to ask them three questions he could find out something; he had not then been arrested.

In my judgment, the corroborating circumstances proved at the trial by the other witnesses, were sufficient, under the law, to authorize the jury, under the charge of the court, to find the defendants guilty, if they believed from the confirmatory evidence of the accomplice's narrative of the transaction, that he told the truth.   The accomplice was not the *only witness* sworn on the part of the state; there were corroborating circumstances, proved by other witnesses, at the trial, confirmatory of the accomplice's narrative of the transaction, and that being so, it was a question for the jury to say whether they would believe him.

The statute does not require that the corroboration of the accomplice's testimony shall be restricted to any particular points in the case, and to what particular points shall the court restrict it?   What shall be the extent of the corroborating circumstances?   Shall the court confine it to the *corpus delicti*, or to the identity of the parties charged, or to the main elements which constitute the offense?   If so, then there would be no necessity for introducing an accomplice in any case; the facts could be established without his testimony.

The truth is, that the accomplice is introduced as a witness from necessity, to prevent a failure of justice, when no one knows the facts except those engaged in the perpetration of the felony.   When the accomplice is introduced as a witness from necessity, the question as to his credibility arises.   Our law does not allow a conviction in cases of felony upon his testimony alone; there must be corroborating circumstances confirmatory of his narrative of the transaction which will satisfy the minds of the jury that he has told the truth.

As before remarked, our Code does not declare what the corroborating circumstances shall be to authorize the jury to believe the testimony of the accomplice so as to dispense with another witness, and when the court undertakes to say what corroborating circumstances, proved by other witnesses, shall

be sufficient to authorize the jury to believe the testimony of the accomplice, it usurps the province and functions of the jury who are the exclusive judges of the credibility of the witnesses sworn at the trial of the case.   In the language of Chief Baron JOY, before cited, "the confirmation ought to be in such and so many parts of the accomplice's *narrative* as may reasonably satisfy the jury that he is telling the truth, without *restricting* the confirmation to any *particular points*, and leaving the effect of such confirmation to the consideration of the jury, aided in that consideration by the observations of the judge."

It will be noticed that there was no attempt on the part of the defendants, except Childers, to account for themselves at the time the robbery was committed.   Childers endeavored to prove an *alibi* by his mother.   As to the proof of an *alibi* on the part of the defendant, Childers, that was a question exclusively for the jury, under the evidence in the case, with which this court should not interfere.

There was no error in the refusal of the court to open the case for the introduction of the testimony taken before the committing magistrate on the statement of facts certified to by the presiding judge.

I am therefore of the opinion that the judgment of the court below should be affirmed, and the defendants punished, under the law, as I have no doubt they deserve to be.