## A00A1122. MOORE v. THE STATE.
(537 SE2d 764)

MILLER, Judge.

In Indictment No. 97-00648, Markett Jerod Moore, Corey Lewis Coleman, and Jabaar Myles were jointly charged with burglary, kidnapping with bodily injury, and armed robbery. Indictment No. 97-00852 charged the same three with an additional count of burglary, two counts of kidnapping with bodily injury, and two counts of armed robbery. The trial court granted the State's motion to consolidate the offenses charged in the separate indictments for trial, and Moore and Coleman were jointly tried before a jury. Myles pled guilty to all charges (except that kidnapping with bodily injury was reduced to simple kidnapping) and testified for the State. Moore was found guilty on all counts. His motion for new trial as amended was denied, and this appeal followed. In six enumerations of error, Moore challenges (1) the introduction of hearsay, (2) and (3) the denial of his motions for directed verdicts, (4) the joinder of the offenses for trial, (5) undue emphasis in the charge on parties to a crime, and (6) the failure of the court to charge that kidnapping with injury is a specific intent crime. We affirm.

1. The second and third enumerations urge the general grounds.[1] Viewed in the light most favorable to the jury's verdicts, the evidence revealed the following:

On April 30, Robert Carver, a retired geologist with the University of Georgia, was staying at a Ramada Inn in Glynn County while attending a seminar on Jekyll Island. At 10:00 p.m., someone knocked at his door. When Carver opened the door, he was accosted by three young men, "two of them with guns." One thrust a gun into the door, pointing it at Carver, who immediately retreated and withdrew his billfold. Carver was ordered to turn around, and when he did someone took his billfold. Carver was then ordered to lie down on the bed and put a pillow over his head. One gunman put a gun against Carver's temple, cocked it, and took Carver's wristwatch from his arm. When Carver tried to lift the pillow from his face, he was struck from behind with a metal object that cut his scalp and caused Carver to pass out. When he awoke, Carver determined that $35 was missing from his billfold.

Fifty-seven-year-old Richard Hull and his wife Elizabeth were in Glynn County on a business trip and stayed at Embassy Suites Hotel. At approximately 10:35 p.m. on April 30, Hull held the door to his room open for his wife to enter when two young men with guns burst into the room. At gunpoint, Hull moved to the sitting area and

---

[1] See *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

got down on the floor. The first gunman took Ms. Hull through a door to the bathroom in the back of the suite. The second gunman demanded Hull's wallet and removed $50.' The first gunman returned, placed his foot on Hull's head and twice demanded to know: "Are you ready to see your wife die?" The first gunman then demanded Hull's watch and wedding ring. After the second gunman left the suite, taking Hull's laptop computer with him, Hull heard the first gunman say: "I'm still here. Get that head back down." Then Hull was struck in the back of the head, causing bleeding.

While waiting for her husband to open the door to their suite, Elizabeth Hull noticed three young men on the same floor, on the other side of the atrium, and thought they looked too young to have rented a room of their own. Ms. Hull put down her purse in the dressing area, but before her husband could close the door, two youths came in with guns drawn and demanding money. The first gunman placed the weapon to Ms. Hull's head and made her kneel on the floor. After kicking Ms. Hull three times, the first gunman told her: "you're going to f–k me." Still kneeling, Ms. Hull told him "No," and the first gunman started to strangle her until she lost consciousness. When she awoke, her head was near the second sink. That is, "[she] was over closer to the other door." The first gunman pulled her up by her dress and ripped all the buttons off. As he raped Ms. Hull, the gunman told her he had AIDS. He then sprayed her with shaving cream and anally sodomized her. The gunmen then took Ms. Hull's rings and jewelry.

Myles was 15 on April 30, when Moore and Coleman drove with Myles to Brunswick from Hazlehurst. Myles heard Coleman and Moore discuss how they could rob somebody, and how Moore said "he was going to do it, too." Coleman had a nine millimeter gun while Moore had what appeared to be a .25. They drove to the Ramada Inn, and all three approached a room rented by an older man, where Coleman knocked on the door. When Carver tried to close the door, Moore and Coleman forced their way in. Coleman told Carver to get on the bed and put a pillow over his head, while Moore ran about looking for money. Myles saw Moore take money out of Carver's wallet, while Coleman took his wristwatch. As they left, Myles saw Coleman hit Carver "with the gun several times."

Dissatisfied with the small amount of money taken from Carver, Coleman drove them to the Embassy Suites. All three walked the various floors of the hotel. When Coleman spied the Hulls opening their door, he ran into the room followed by Moore. Their weapons were visible. His gun on Richard Hull, Moore took Hull's watch and some rings, while Coleman went to the back. Myles saw Coleman sexually assaulting Ms. Hull. Back in the car, Myles observed jewelry, wedding bands, rings, and the laptop computer Moore brought

with him.

Although fingerprint evidence linked Coleman and Myles to the Embassy Suites attack, there were no useable prints traceable to Moore. In a custodial statement, Moore admitted being with Coleman and Myles on the night in question and driving with them to the hotels, but denied any active involvement. He further acknowledged that he knew his companions were "creeping," that is "'going in on somebody in a room.'" Specifically, he blamed Myles for taking the jewelry and computer during the incident at the Embassy Suites. But when Moore was first questioned on May 2, the investigating officer noticed Moore wore a Timex Indiglo watch with a brown leather band such as Mr. Hull had described. This was seized and identified by Mr. Hull at trial as that stolen from him.

(a) Moore argues the evidence is legally insufficient because the testimony of his accomplice Myles was not corroborated, as required in felony cases by OCGA § 24-4-8.[2]

> While such corroborating evidence must do more than merely cast on the defendant a grave suspicion of [guilt], it may consist entirely of circumstantial evidence, or evidence of an accused's conduct before and after the crime that [implies] he participated therein. The sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration connecting an accused to a crime, even if it is circumstantial, it is legally sufficient.[3]

No victim could identify Moore at trial or otherwise directly connect him to the crimes, and so their corroboration of accomplice Myles in numerous details still amounts to no corroboration of Myles's identification of Moore as an active participant.[4] Yet, "the accused's own statement can serve to corroborate his accomplice's inculpatory testimony."[5] In our view, Moore's statement that he willingly accompanied his friends despite knowing they were "creeping," and knew jewelry and a laptop computer were taken from the Embassy Suites incident is sufficient evidence corroborating Myles's

---

[2] The testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . .

[3] (Punctuation and footnotes omitted.) *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996).

[4] *Childers v. State*, 52 Ga. 106, 110-111 (1874).

[5] (Citation omitted.) *Floyd v. State*, 272 Ga. 65, 66 (1) (525 SE2d 683) (2000).

testimony inculpating Moore.[6] Moreover, Moore's recent unexplained possession of Robert Hull's stolen watch is itself sufficient independent corroboration of the accomplice.[7]

(b) The evidence was sufficient under the standard of *Jackson v. Virginia*[8] to authorize the jury's verdicts that Moore is guilty, beyond a reasonable doubt, as a party to the crimes of burglary,[9] armed robbery,[10] and kidnapping with bodily injury as alleged in the indictments.[11] The trial court correctly denied Moore's motions for directed verdicts of acquittal.

2. The first enumeration contends the trial court erred in admitting hearsay when Nurse Harper was permitted to relate Ms. Hull's recorded statement that three young men burst into her hotel room, whereas Ms. Hull mentioned only two in her testimony. But since this is cumulative of Myles's testimony that all three entered the Hull suite, any error was harmless.[12]

3. The fourth enumeration contends the trial court erred in granting the State's motion to consolidate for trial the offenses charged in Indictment No. 97-00648 with those charged in Indictment No. 97-00852.

To avoid multiple or successive prosecutions, a prosecutor is required to try in a single prosecution all the crimes arising out of the same conduct within the jurisdiction of a single court,[13] except the court, in the interest of justice, may order that one or more of such charges be tried separately.[14] Severance (or joinder) in the interest of justice is discretionary.[15] Where, as here, the evidence shows a continuous scheme or ongoing spree such that evidence of one incident would be admissible in the trial of the similar crimes committed the same night in the other incident, the trial court did not abuse its discretion in granting the State's motion to consolidate the indictments for trial.[16]

4. In a general charge covering thirty-three pages of transcript, five references (including a recharge) to criminal liability as a party

---

[6] *Wisenbaker v. State*, 259 Ga. 416, 417 (383 SE2d 132) (1989).

[7] *Inman v. State*, 182 Ga. App. 209 (355 SE2d 119) (1987) (whole court).

[8] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] *Brown v. State*, 224 Ga. App. 241, 242 (1) (480 SE2d 276) (1997).

[10] *Davis v. State*, 244 Ga. App. 345, 346 (1) (535 SE2d 528) (2000).

[11] *Brown v. State*, supra, 224 Ga. App. at 242 (1). Accord *Kimble v. State*, 236 Ga. App. 391, 396 (2) (512 SE2d 306) (1999).

[12] *Assad v. State*, 195 Ga. App. 692, 693 (2) (394 SE2d 617) (1990) (admission of hearsay which is cumulative of direct testimony of a witness amounts to harmless error).

[13] OCGA § 16-1-7 (b).

[14] OCGA § 16-1-7 (c).

[15] *Jarrell v. State*, 234 Ga. 410, 413 (1) (216 SE2d 258) (1975).

[16] *Catchings v. State*, 256 Ga. 241, 243 (4) (347 SE2d 572) (1986). Accord *Jones v. State*, 226 Ga. App. 428, 430-431 (2) (487 SE2d 62) (1997).

to the eight incidents of the three types of crimes alleged is neither unduly repetitive or emphatic nor unfairly prejudicial.[17]

5. Since one can be liable as a party to the crime of kidnapping with bodily injury committed during the course of a conspiracy without actually participating in the act, the trial court did not err in failing to charge that kidnapping is a specific intent crime. The specific intent of the actor Coleman is transferred to all his co-conspirators.[18]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 26, 2000 —
RECONSIDERATION DENIED AUGUST 23, 2000

*Jackson & Schiavone, G. Terry Jackson, Steven L. Sparger*, for appellant.

*Stephen D. Kelley, District Attorney, C. Keith Higgins, Assistant District Attorney*, for appellee.

