A01A1726. COLEMAN v. THE STATE.
(557 SE2d 430)

BLACKBURN, Chief Judge.

Following a jury trial, Corey Lewis Coleman appeals his conviction for burglary, kidnapping with bodily injury, armed robbery, rape, and aggravated sodomy, contending that the introduction of a redacted inculpatory statement made by Markett Jerod Moore, his co-defendant, violated his Sixth Amendment rights under *Bruton v. United States*.[1] For the reasons set forth below, we affirm.

*Bruton* held that the admission of a statement of a nontestifying co-defendant

> which inculpates the defendant unconstitutionally deprives that defendant of the Sixth Amendment right to cross-examine witnesses, even where the jury is instructed to limit its consideration of the statement to the co-defendant who made it. While a non-testifying co-defendant's statement which is redacted so that it eliminates any reference to the existence of the defendant will withstand scrutiny under *Bruton* so long as it is accompanied by instructions limiting its use to the case against its maker, a non-testifying co-defendant's statement which is redacted by merely replacing the defendant's name with a blank or symbol violates *Bruton* regardless of whether limiting instructions are given. As the U. S. Supreme Court held, to replace the defendant's name "with an obvious blank will not likely fool

---

[1] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

anyone." [*Gray v. Maryland.*[2]] Instead statements which, despite redaction, refer directly to a person whom the jury may infer to be the defendant run afoul of the confrontation clause "even w(h)ere the confession (is) the very first item introduced at trial." [Id.]

(Footnotes omitted.) *Davis v. State.*[3]

In this case, Moore made certain pre-trial statements concerning the crimes with which Coleman had been charged. Although Moore did not testify at trial, his statements were introduced by one of the arresting officers; however, Coleman's name was redacted from the statement and replaced with "the other person." Even if we were to accept Coleman's argument that these statements violated the standards set forth under *Bruton,* " 'we will not reverse unless error is shown to be harmful. If overwhelming evidence against a defendant exists apart from the statement of the co-defendant, then any violation of *Bruton* can be said to be harmless beyond a reasonable doubt.' " *Mathis v. State.*[4]

The evidence of Coleman's guilt apart from Moore's statements is indeed overwhelming. The facts were set out in detail in co-defendant Moore's prior appeal before this Court, and we adopt them here. *Moore v. State.*[5]

> On April 30, [the defendant's first victim], a retired geologist with the University of Georgia, was staying at a Ramada Inn in Glynn County while attending a seminar on Jekyll Island. At 10:00 p.m., someone knocked at his door. When [the geologist] opened the door, he was accosted by three young men, "two of them with guns." One thrust a gun into the door, pointing it at [the geologist], who immediately retreated and withdrew his billfold. [The geologist] was ordered to turn around, and when he did someone took his billfold. [The geologist] was then ordered to lie down on the bed and put a pillow over his head. One gunman put a gun against [the geologist's] temple, cocked it, and took [the geologist's] wristwatch from his arm. When [the geologist] tried to lift the pillow from his face, he was struck from behind with a metal object that cut his scalp and caused [the geologist] to pass out. When he awoke, [the geologist] determined that $35 was missing from his billfold.

[2] *Gray v. Maryland,* 523 U. S. 185 (118 SC 1151, 140 LE2d 294) (1998).
[3] *Davis v. State,* 272 Ga. 327, 330-331 (6) (528 SE2d 800) (2000).
[4] *Mathis v. State,* 238 Ga. App. 218, 220 (3) (517 SE2d 578) (1999).
[5] *Moore v. State,* 245 Ga. App. 641 (537 SE2d 764) (2000).

[The defendant's next victims, a 57]-year-old [man] and his wife . . . were in Glynn County on a business trip and stayed at Embassy Suites Hotel. At approximately 10:35 p.m. on April 30, [the man] held the door to his room open for his wife to enter when two young men with guns burst into the room. At gunpoint, [the man] moved to the sitting area and got down on the floor. The first gunman took [the man's wife] through a door to the bathroom in the back of the suite. The second gunman demanded [the man's] wallet and removed $50. The first gunman returned, placed his foot on [the man's] head and twice demanded to know: "Are you ready to see your wife die?" The first gunman then demanded [the man's] watch and wedding ring. After the second gunman left the suite, taking [the man's] laptop computer with him, [the man] heard the first gunman say: "I'm still here. Get that head back down." Then [the victim] was struck in the back of the head, causing bleeding.

While waiting for her husband to open the door to their suite, [the wife] noticed three young men on the same floor, on the other side of the atrium, and thought they looked too young to have rented a room of their own. [The wife] put down her purse in the dressing area, but before her husband could close the door, two youths came in with guns drawn and demanding money. The first gunman placed the weapon to [the wife's] head and made her kneel on the floor. After kicking [the wife] three times, the first gunman told her: "you're going to f–k me." Still kneeling, [the wife] told him "No," and the first gunman started to strangle her until she lost consciousness. When she awoke, her head was near the second sink. That is, "(she) was over closer to the other door." The first gunman pulled her up by her dress and ripped all the buttons off. As he raped [the wife], the gunman told her he had AIDS. He then sprayed her with shaving cream and anally sodomized her. The gunmen then took [the wife's] rings and jewelry.

[Jabaar Myles, the third co-defendant with Coleman and Moore, testified at trial that Coleman and Moore participated in the crimes.] Myles was 15 on April 30, when Moore and Coleman drove with Myles to Brunswick from Hazlehurst. Myles heard Coleman and Moore discuss how they could rob somebody, and how Moore said "he was going to do it, too." Coleman had a nine millimeter gun while Moore had what appeared to be a .25. They drove to the Ramada Inn, and all three approached a room rented by an older man, where Coleman knocked on the door. When [the geologist]

tried to close the door, Moore and Coleman forced their way in. Coleman told [the geologist] to get on the bed and put a pillow over his head, while Moore ran about looking for money. Myles saw Moore take money out of [the geologist's] wallet, while Coleman took his wristwatch. As they left, Myles saw Coleman hit [the geologist] "with the gun several times."

Dissatisfied with the small amount of money taken from [the geologist], Coleman drove them to the Embassy Suites. All three walked the various floors of the hotel. When Coleman spied the [second victim and his wife] opening their door, he ran into the room followed by Moore. Their weapons were visible. His gun on [the second victim], Moore took [his] watch and some rings, while Coleman went to the back. Myles saw Coleman sexually assaulting [the wife]. Back in the car, Myles observed jewelry, wedding bands, rings, and the laptop computer Moore brought with him.

Id. at 641-643 (1).

In addition to this evidence, Coleman's fingerprints were found both on a coffeepot box in the geologist's room and on the can of shaving cream used during the sexual assault of the second victim's wife. Furthermore, a ring stolen from the second victim's wife was recovered in Coleman's bedroom.

This evidence, apart from the pre-trial statements made by Moore, provides overwhelming proof that Coleman was guilty of the crimes for which he was convicted. As such, any violation of *Bruton*, if it existed, was harmless, and Coleman's convictions must stand.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 5, 2001 —
RECONSIDERATION DENIED DECEMBER 19, 2001 — 

*Robert C. Harper*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.