A11A2142. GILMORE v. THE STATE.
A11A2143. YOUNG v. THE STATE.
(726 SE2d 584)

PHIPPS, Presiding Judge.

In connection with two home invasions in Louisville, Jefferson County, Kyle Gilmore and Christopher Young were tried, along with two other individuals, on multiple counts of an indictment. A fifth individual, B. M., sixteen years old at the time of the break-ins, was charged also in the indictment, but accepted a plea deal that allowed him to be treated as a juvenile. Thereupon testifying as a state's witness at the joint trial of his co-indictees, B. M. confessed that he

---

had participated in the criminal incidents and identified as participants the four co-defendants. The jury found each co-defendant guilty of numerous offenses. In Case Nos. A11A2142 and A11A2143, respectively, Gilmore and Young appeal their convictions. Because B. M.'s identification testimony of them, however, was not corroborated as required pursuant to OCGA § 24-4-8, the evidence was insufficient to support the verdicts. Gilmore's and Young's judgments of conviction are therefore reversed.

Testimony of the victims and police investigators showed the following. At about 3:00 a.m. on July 2, 2007, at least five male individuals — with their faces concealed — broke into a residence. The intruders encountered a woman in one bedroom, pointed guns at her, and demanded money. When she told them that she did not know where any money was, the intruders began searching the room. Several of them went to another bedroom, where they encountered a man and a woman. The intruders pointed guns at the couple and demanded money. One intruder used his gun to strike the man about his head, then other intruders dragged the man out of the bedroom and into another room. One of them continued to point a gun at the man's head, as the intruders again demanded money. Because the man insisted that he did not know where any money was, an intruder used his gun to strike him again about the head, causing the man to fall. The intruders began fleeing the residence, and one of them fired a shot. The intruders took with them cash that belonged to the man and a cell phone that belonged to the second woman they encountered.

The mayhem had lasted about ten minutes, during which time, the male resident recognized B. M. when his facial covering slipped down. The male resident had recognized two others as his cousins (neither cousin was Gilmore or Young). The remaining intruders, however, the male resident had not recognized. The women at the residence had recognized none of the intruders. The guns used by the intruders were never recovered, and the state adduced no evidence regarding whether any property taken from the victims was ever recovered.

Within an hour of that home invasion, several individuals broke into a different residence. No one was home, so the intruders began to ransack the home. The resident and his friend arrived, however, while the intruders were still inside. When the resident walked through the back door, shots were fired, striking the resident in the leg. The intruders ran away. Neither the resident nor his friend was able to identify any of the perpetrators; and no gun used by any perpetrator was ever recovered.

At trial, B. M. testified that he had been one of five intruders at

both home invasions, and he identified as his cohorts the four co-defendants: Gilmore, Young, and the two cousins of the male victim at the first residence. B. M. testified that they had gone to the first residence to commit robbery; they were looking specifically for drugs and money. He acknowledged at trial, also, that he previously had said that their purpose for going to that residence was to collect a debt, adding at trial that they had planned to do so by force. B. M. testified that they had gone to the second residence also looking for drugs and money.

None of the four co-defendants testified.

### *Case No. A11A2142*

Regarding the crimes committed during the first home invasion, Gilmore was convicted of burglary; one count of attempted armed robbery, with respect to the first woman encountered after the intrusion; two counts of armed robbery, with respect to the couple; and three counts of aggravated assault, by pointing a gun at the three occupants. Regarding the crimes committed during the second home invasion, Gilmore was convicted of burglary.

1. Gilmore contends that the evidence was insufficient, pointing out that none of the victims was able to identify him as a perpetrator and further asserting that his felony convictions rested solely on the uncorroborated testimony of an accomplice, B. M., in violation of OCGA § 24-4-8.

"That Code section provides that the uncorroborated testimony of an accomplice is insufficient to support a felony conviction."[1] And as the Supreme Court of Georgia has further noted, "the corroboration rule of OCGA § 24-4-8 is made more stringent by the requirement, not contained in the statute, that the state must provide corroboration of an accomplice's testimony regarding the identification and participation of the defendant."[2]

> Under [OCGA § 24-4-8], testimony which concerns the identity of other participants must be corroborated by some means independent of the testimony of the accomplice. . . . Therefore, a distinction must be made between evidence which tends to prove the truth of the accomplice's general testimony and that which tends to prove the identity and

---

[1] *Parkerson v. State*, 265 Ga. 438 (2) (457 SE2d 667) (1995) (footnote omitted).

[2] Id. at 439 (2) (footnote omitted). The *Parkerson* Court expressly declined to review the propriety of this additional, nonstatutory requirement for separate corroboration of the identification and participation. Id. at n. 4.

participation of the accused. . . . [I]nsofar as the participation and identity of the accused is concerned, there must be independent corroborating evidence which tends to connect the *accused with the crime.* Simply because an accomplice's testimony is corroborated in most details, it does not follow that his testimony alone as to the identity and participation of the accused is sufficient to justify conviction.[3]

As set forth above, B. M. was the state's sole witness who identified Gilmore (or Young) as a participant of the crimes committed at the residences. And although the state presented several witnesses who corroborated numerous particulars of B. M.'s account of the crimes committed there,[4] the state failed to adduce evidence required to corroborate B. M.'s testimony identifying Gilmore (or Young) as a participant therein.[5]

[S]light evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict. Moreover, the corroborating evidence itself need not be sufficient to warrant conviction, but only tend to connect and identify defendant with the crime. The corroborating evidence may consist entirely of circumstantial evidence and may include defendant's conduct before and after the crime was committed.[6]

But in this case, the state presented no such corroborating facts or circumstances; nor did the state adduce any evidence of Gilmore's (or Young's) conduct, before or after the crimes were committed, that tended to connect and identify him with the crimes.

(a) On appeal, the state first asserts that testimony by the victims provided the requisite corroboration. But no victim could identify Gilmore as one of the perpetrators.

(b) Second, the state asserts that corroboration was supplied by

---

[3] *Hill v. State,* 236 Ga. 831, 833-834 (225 SE2d 281) (1976) (citations and punctuation omitted; emphasis supplied).

[4] But see *Caldwell v. State,* 227 Ga. 703, 706-707 (182 SE2d 789) (1971) ("Corroboration of the accomplice as to the time, place and circumstances of the transaction, if there be nothing to show any connection of the defendant therewith except the testimony of the accomplice, is not sufficient to support a conviction.") (citations and punctuation omitted).

[5] See *Hill,* supra.

[6] *King v. State,* 268 Ga. App. 811, 813 (1) (603 SE2d 88) (2004) (citations and punctuation omitted).

Gilmore's statement to police.[7] The state elicited a police investigator's recollection of a portion of Gilmore's statement:

> Q: Who did Kyle Gilmore say he was with during the early morning hours or the night of July 2d, 2007?
> A: Kyle stated that he, along with [B. M.] and another, went to the park.

The investigator's testimony — merely that, at some point on the night or early morning in question, for some unknown duration, at a park of unspecified location and with no reference to either residence burglarized, Gilmore was in the company of B. M. and another — did not tend to connect and identify Gilmore with any crime at issue. Nothing in the testimony either placed Gilmore at one of the crime scenes[8] or otherwise connected him to any crime committed at those locations;[9] the investigator's testimony revealed nothing about Gilmore's conduct at the time Gilmore and another were in B. M.'s company;[10] and it showed nothing about Gilmore's conduct either before or after

---

[7] See *Moore v. State*, 245 Ga. App. 641, 643 (1) (537 SE2d 764) (2000) (the accused's own statement can serve to corroborate his accomplice's inculpatory testimony).

[8] Compare, e.g., *Jones v. State*, 271 Ga. 433-434 (520 SE2d 690) (1999) (corroboration supplied for accomplice's testimony to sustain felony murder conviction, where state adduced defendant's own post-arrest statement, in which he admitted being present when his accomplice(s) committed the murder, and the defendant's statement was replete with details that only a participant in the crime would know); *Parkerson*, supra at 439 (2) (corroboration for accomplice's testimony to sustain murder conviction was supplied by defendant's own testimony, placing himself at the scene and as a participant in disposing of some of the evidence, including the murder weapon); *Solomon v. State*, 161 Ga. App. 566 (288 SE2d 342) (1982) (corroboration supplied for accomplice's testimony to sustain school burglary by appellant's timely presence at the scene of the crime and the circumstances of finding him there — police officers discovered appellant crouched behind one of the school's air conditioning units).

[9] Compare, e.g., *Jupiter v. State*, 308 Ga. App. 386, 391-392 (2) (707 SE2d 592) (2011) (corroboration supplied in prosecution for armed robbery and related crimes, where articles of clothing — that appeared recently worn and matched descriptions of those worn by suspect — were found discarded just inside the entrance of an exterior crawl space of appellant's mother's home, which was a quarter-mile from where police stopped getaway car and suspect fled on foot in the direction of appellant's mother's home); *Cox v. State*, 243 Ga. App. 790-792 (534 SE2d 464) (2000) (in prosecution for armed robbery at a store by two men, where one of the men had a towel wrapped around his face and removed $6,000-$7,000 from a safe, corroboration was supplied by evidence, inter alia, that within 45 minutes of the crime, appellant was seen running out of a dirt path that led from the store and carrying a gun which he tried to conceal in a towel; footprints on that path led directly to the vacant apartment where appellant's mother had lived before she died three weeks before; and within two hours of robbery, appellant was seen with "folded up, knots of money").

[10] Compare, e.g., *Parkerson*, supra; *Bradford v. State*, 262 Ga. 512-513 (421 SE2d 523) (1992) (corroboration supplied for accomplice's testimony to sustain convictions for armed robbery and murder of a convenience store clerk, where appellant admitted in his statement to police that he was driving his brother's white BMW the night the crimes were committed, that he was in need of money, and that he dropped off and later picked up his brother and a man who matched the description of the accomplice and who was wearing a holster clip; an eyewitness

either home invasion.[11] "Testimony which shows nothing more than the defendant was . . . in the company of the accomplice at [even] the approximate time of the offense charged is insufficient corroboration."[12]

(c) Third, the state cites evidence of a redacted confession of Gilmore's co-defendant, Merkeith Lane. A second accomplice may corroborate testimony of another accomplice, but only where both accomplices testify and thus are available for cross-examination.[13] Because Lane did not testify, the cited evidence was not admissible as against Gilmore (as the trial court instructed),[14] and consequently contributed no corroboration for B. M.'s testimony.[15]

(d) Finally, the state cites evidence that, one night about a week before the underlying criminal incidents, Gilmore had an encounter

---

to the convenience store crimes saw appellant's brother and the accomplice leave the convenience store and enter the passenger side of a white car; police found in the appellant's bedroom .22 caliber bullets of the same brand used in the shooting); *Sparks v. State*, 234 Ga. App. 11, 12 (1) (505 SE2d 555) (1998) (sufficient corroboration for accomplice's testimony in burglary prosecution and firearm possession, where several witnesses who were not accomplices testified that defendant and accomplice were in park smoking and drinking when they started talking about robbing someone; that defendant and accomplice started walking toward victim's house; that after gunshot was heard, defendant and accomplice were seen running from scene; and that on night in question, defendant had asked another for a gun to use in a robbery).

[11] Compare, e.g., *Drake v. State*, 245 Ga. 798, 803 (4) (267 SE2d 237) (1980) (defendant's attempts to conceal his own participation in an offense can corroborate his accomplice's testimony regarding the defendant's participation), overruled on other grounds, *Harwell v. State*, 270 Ga. 765, 770 (2) (512 SE2d 892) (1999); *Johnson v. State*, 275 Ga. App. 161, 162 (620 SE2d 433) (2005) (defendant's possession of boat, as well as his flight from the scene where boat had been taken, was sufficient to corroborate accomplice's testimony regarding defendant's participation in the theft of boat; *Blair v. State*, 246 Ga. App. 533-534 (541 SE2d 120) (2000) (accomplice's testimony corroborated by defendant's unexplained recent possession of stolen items); *Cox*, supra.

[12] *Adams v. State*, 140 Ga. App. 621 (231 SE2d 547) (1976) (citations omitted); see generally *Wiggins v. State*, 80 Ga. App. 258, 260-262 (3) (55 SE2d 842) (1949) (in prosecution for larceny of a car, where accomplice testified that he, the defendant, and two others conspired to steal the car, there was insufficient corroborative evidence where "the only other positive testimony is that of the witness who saw the defendant riding in the car with [the accomplice] and the others said by [the accomplice] to have participated in its theft") (physical precedent only).

[13] See *Gallimore v. State*, 264 Ga. App. 629, 630 (591 SE2d 485) (2003) (where an additional accomplice provides testimony to corroborate that of the first accomplice, evidence can suffice to sustain conviction); *Reeves v. State*, 244 Ga. App. 15, 18 (1) (c) (534 SE2d 179) (2000) (where two witnesses swear to the same facts, the circumstance that one is an accomplice does not render the evidence insufficient as uncorroborated under OCGA § 24-4-8).

[14] See *Bridges v. State*, 279 Ga. 351, 355 (4), n. 12 (613 SE2d 621) (2005) (hearsay has no probative value). See generally *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (admission of a powerfully incriminating extrajudicial statement of a nontestifying co-defendant can pose a substantial threat to a defendant's rights under the Confrontation Clause that cannot be cured by a limiting instruction), and its progeny.

[15] See OCGA § 24-3-52 ("The confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself."); *Brooks v. State*, 271 Ga. 698 (1) (523 SE2d 866) (1999).

with Isaac Thompson, who lived at the first residence burglarized. (Thompson was not at home at the time of the burglary.) Thompson testified that Gilmore, whom he knew "by face," and several other guys were shooting dice on the sidewalk in front of his (Thompson's) grandmother's house and making a lot of noise, so he told them to move. Thompson recalled that, when Gilmore "got a little smart out of the mouth[,] . . . I just told him, this ain't what you want." Gilmore and the others left — although none appeared happy to do so, according to Thompson.

This episode, the state asserts in its brief, motivated Gilmore to commit the crimes the following week at Thompson's residence. But even where — unlike in this case — "[t]here is considerable evidence in the record tending to show that the defendant . . . had ample motive to commit the crime with which he was charged, . . . mere motive is not sufficient corroboration."[16] Furthermore, no fact or circumstance of that episode tended to connect and identify Gilmore with the crimes committed about a week later, or lead to an inference that he was guilty thereof.[17]

> The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and are more than sufficient to merely cast on the defendant a grave suspicion of guilt.[18]

"[T]he sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the

---

[16] *Nix v. State*, 133 Ga. App. 417, 419 (211 SE2d 26) (1974), cited in *Reaves v. State*, 242 Ga. 542, 543 (1) (250 SE2d 376) (1978) ("Evidence of motive is not, in itself, sufficient corroboration of the testimony of an accomplice."), overruled on other grounds, *Felker v. State*, 252 Ga. 351, 366 (2) (a) (314 SE2d 621) (1984).

[17] Compare, e.g., *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996) (accomplice's testimony sufficiently corroborated on murder and burglary counts, where offenses were committed while murder victim's son was asleep upstairs; son had previously broken into appellant's home on several occasions and had stolen various items, including jewelry, guns, cash, and narcotics; appellant had warned son's father that if the burglaries and thefts did not cease, appellant would retaliate against son; and after the murder, appellant was observed celebrating and offered to provide appellant's accomplice with an alibi after accomplice was arrested).

[18] *Bradford v. State*, 261 Ga. 833, 834 (1) (412 SE2d 534) (1992); see *Caldwell*, supra at 706.

verdict is legally sufficient."[19] Here, evidence that Gilmore was with B. M. and another at some point during the night or early morning of July 2, together with evidence of Gilmore's prior encounter with Thompson, did not tend to directly connect Gilmore with any crime at issue. And without going to that extent, such evidence could merely cast a grave suspicion upon Gilmore. Because the state did not introduce even slight evidence corroborating B. M.'s testimony identifying Gilmore as a participant in the crimes, the verdicts returned against him were not legally supported. Viewed in the light most favorable to the prosecution, the evidence was insufficient, and consequently, Gilmore's convictions cannot stand.[20]

2. Gilmore's remaining claims of error — that the trial court erred under *Bruton v. State*[21] and its progeny by allowing in evidence his co-defendant's redacted confession; that the trial court erred by not instructing the jury on the law regarding corroboration of accomplice testimony in felony cases;[22] and that his trial counsel was ineffective because, inter alia, the lawyer withdrew a request to instruct the jury on the law regarding corroboration of accomplice testimony in felony cases — are moot. We therefore do not reach them.

### *Case No. A11A2143*

Regarding the crimes committed during the first home invasion, Young was convicted of burglary; one count of attempted armed robbery, with respect to the first woman encountered after the intrusion; two counts of armed robbery, with respect to the couple; two counts of aggravated assault, by pointing a gun at the couple; and another count of aggravated assault, by using a gun to strike the male resident about the head. Regarding the crimes committed during the second home invasion, Young was convicted of burglary.

3. Young challenges the sufficiency of the evidence to support his convictions, arguing that they all rested solely on the uncorroborated testimony of an accomplice, B. M., in violation of OCGA § 24-4-8.

The state cites: (i) the victims' testimony; (ii) the redacted confession of his co-defendant, Merkeith Lane; and (iii) evidence of

---

[19] *Bradford*, 261 Ga. at 834 (1) (citation and punctuation omitted); see *Brookshire v. State*, 230 Ga. App. 418, 419 (496 SE2d 757) (1998) ("The sufficiency of the corroborating testimony is a jury question, but whether the evidence actually amounts to *corroboration* of guilt is a question of law for the court.") (emphasis in original) (physical precedent only).

[20] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); *Hill*, supra; *Adams*, supra; *Nix*, supra.

[21] Supra.

[22] See OCGA § 24-4-8; Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.) § 1.31.90.

Young's police statement. Regarding the latter, the state elicited a police investigator's recollection of a portion of Young's statement:

> Q: Did Christopher Young tell you who he was with during the morning of July 2nd, 2007?
> A: Yes, ma'am, he did.
> Q: Who did Christopher Young tell you that he was with?
> A: He said that he, [B. M.], and others went to the park.

Under our analysis set forth in Division 1,[23] the evidence admissible against Young did not tend to directly connect him with any crime at issue here. Thus, the verdicts returned against him were not legally supported. Viewed in the light most favorable to the prosecution, the evidence was insufficient, and consequently, Young's convictions cannot stand.[24]

4. Young's remaining claims of error — complaining of a ruling upon an objection during closing argument and complaining that certain counts were not merged with others for purposes of sentencing — are moot. We therefore do not reach them.

*Judgments reversed. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 22, 2012 — ■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Jimmonique R. S. Rodgers*, for appellant (case no. A11A2142).

*Harrison & Harrison, Samuel H. Harrison*, for appellant (case no. A11A2143).

*S. Hayward Altman, District Attorney, John A. Fitzner III, Kelly A. Jenkins, Assistant District Attorneys*, for appellee.

---

[23] Supra.

[24] See *Jackson v. Virginia*, supra; *Hill*, supra; *Adams*, supra; *Nix*, supra.